PATTON, et ux, v. QUARRIER, TRUSTEE et als.  $\begin{smallmatrix} 18 & 447 \\ 48 & 510 \end{smallmatrix}$

Decided October 29th, 1881.

1. Where at the time of purchase of real estate there is a road or right of way used by the public, such as a public highway or a road used so long that there may be a presumption of a dedication to the public, the purchaser takes the land subject to such rights ; and he is not protected even by a deed of warranty against encumbrances.

2. Where no private right of way or other easement is reserved in the deed itself, and the purchaser has no notice of any such claim, he takes the property without the burden of any such claim either from the grantor or any person claiming under him.

3. Where the deed conveys land without reservation, the grantee takes all conveyed by the deed unencumbered, unless in some way notice is brought home to him, that the land is subject to the encumhrance of some easement or privilege in another person or in the public.

Appeal from two decrees of the judge of the seventh judicial circuit in vacation, rendered on the 20th day of January, 1881, and on the 1st day of February, 1881, respectively, in a cause in the circuit court of the county of Kanawha then pending, wherein Oliver A. Patton and R. Ellen Patton were plaintiffs and William A. Quarrier, trustee, and others were defendants, allowed upon the petition of said plaintiffs.

Hon. F. A. Guthrie, judge of the seventh judicial circuit, rendered the decrees appealed from.

The facts of the case fully appear in the opinion of the court.

No appearance for appellants.

J. M. Paine for appellees cited the following authorities: Washburn on Easements (1863) 147; Id. 162; Va. L. Jour., March, 1881, 178; 23 Grat. 1; High on Inj. § 310; 7 W. Va. 707; Code, ch. 121, § 1; 11 W. Va. 694.

PATTON, JUDGE, announced the opinion of the court:

On the 11th day of June, 1879, Ellen N. Rand and Noyes Rand conveyed to N. Ellen Patton, wife of O. A. Patton, to her sole and separate use a house and lot in the town of Charleston, West Virginia; at the same time Patton and wife executed a deed of trust upon said house and lot to William A. Quarrier, trustee, to secure the balance of purchase-money—a portion, $600.00, having been paid in cash—represented by two notes of $800.00 each, payable in one and two years to the order of Ellen N. Rand. Before the sale of the house and lot to Mrs. Patton Mrs. Rand had executed a deed of trust to William A. Quarrier, trustee, upon the same property to secure the payment to J. Z. McChesney of a debt, which amounted as of the 24th day of August, 1880, to

the sum of $799,75, the debt due by Mrs. Rand to McChesney and the first bond due by Mrs. Patton to Mrs. Rand not having been paid, William A. Quarrier on the 24th day of August, 1880, advertised the said house and lot, to be sold on the 23d day of October, 1880. On the 18th day of October, Patton and wife obtained an injunction to the sale of the property. This injunction was subsequently dissolved, and a motion was afterwards made to reinstate the injunction, which was refused.

From the orders dissolving said injunction and refusing to reinstate the same, an appeal and *supersedeas* was allowed to this court.

There are three grounds alleged in the bill for relief. The first ground is, that when the complainant went to examine the lot, the day preceding the purchase, it was represented to him, that the fence then enclosing the said lot marked its boundaries, and that the fence then standing across the rear end of the lot was on the line ; that this representation was made by Noyes Rand, who was acting as the agent of Ellen N. Rand in the transaction, that subsequently this fence was moved in —— feet and a portion of the land taken possession of by one Couch. It is sufficient to observe, that this allegation is denied in the answer; and no proof whatever is offered in support of it.

The second ground is, that there is other property liable to the satisfaction of the debt secured in the McChesney deed of trust, which should be sold before the property of the complainant. This is also denied in the answer, and no proof is offered in support of the allegation.

The third ground is, " that when they purchased the said lot and house, they were informed by the said Noyes Rand, agent, &c., with whom the negotiation was carried on by complainant Patton, and believed, that no alley was provided for through and over the premises purchased by them as aforesaid, but your orators now are informed and charge, that the defendant Ellen N. Rand sold to divers persons, to-wit: D. C. Kline, Couch, Kenney, Ryan and other defendants named herein several lots adjoining the property purchased by complainants with the distinct agreement, that an alley for their convenience no less than for the use of the public should be

provided for and opened over, in and through the lot subsequently purchased by complainants, who had been informed and believed, that no such rights had been purchased by the said defendants over and through the lot purchased by complainants.

" Complainants allege, that they have been informed by the defendants or some of them, that they purchased these lots by a map and plat, which distinctly provided for an alley of the width of twenty feet to be left open for the use and benefit of themselves and the public, and they inform complainants, that they are entitled to the said alley-way, and that they will insist upon the same, when they desire to use the same, orators say, that the map or plat, by which they purchased the said house and lot did not provide for such an alley or any alley or pass-way of any character whatsoever, but that they bought the land including the ground, where a portion of the defendants claim they are entitled to such alley and pass-way as agreed upon between themselves and the defendant, Rand, before the purchase of complainants was made. Orators state, that to open the said alley and pass-way as claimed by the defendant would be to them an irreparable injury and wrong; that it would be unjust and a fraud upon their rights as owners of the said house and lot; that it would compel the filling up of the well, which on account of its great depth could not be replaced upon the said premises without a very heavy outlay, to wit, $300.00; that it would require the tearing away of the rear portion of the residence of the complainants and the removal of the entire house many feet from its present location at a cost of a large sum of money, to wit, not less than $600.00, and would subject complainants to great inconvenience and annoyance, and destroy the said property in value to a very great amount, at the same time exposing them to a thoroughfare of the public in such proximity, as to render the house an unfit and in every way an undesirable place to live and reduce the value to one half of the amount agreed by complainants to pay for the same."

I have given the third ground of relief stated in the bill in the language of the bill itself. The parties named in the bill as purchasers of lots adjoining the property purchased by Mrs. Patton and as claiming the right to the alley and pass-

way are made parties to the bill and were served with process, but did not appear and answer; and the bill was taken as confessed as to them. Ellen N. Rand, J. Z. McChesney and Noyes Rand answered the bill. Noyes Rand in his answer says:

"This respondent further says that in making sales of lots fronting Morris street, as this lot sold to complainants fronts, respondent provided for an alley in the rear of each lot twenty-one feet wide, except the Noyes lot, so that wagons and carts could be turned around, and it was never contemplated that the alley should run entirely through the property, because respondent expected to own and occupy this property sold the complainants, and did not desire an alley through, but only up to the side lines thereof on either side, coming in from Lee street on the north and Quarrier street on the south, and respondent says that no one save the complainants themselves has any right whatever to open an alley through the said property, and they will not have such right till the same is paid for; and the very fact, as the bill alleges, that such an alley would destroy the well upon the property and 'require the tearing away of the rear portion of the residence, and the removal of the entire house many feet from its present location, at a cost of a large sum of money,' &c., which in truth and in fact would be the effect, shows very plainly that no one could have contemplated the opening of such an alley, and respondent positively denies that any purchaser of any of the adjacent lots has any right under his deed or any map or from any source whatever to an alley through the lot sold by his mother, Mrs. Ellen N. Rand, to the complainant, R. Ellen Patton."

It appears from the evidence, that Ellen N. Rand sold to different persons several lots contiguous to the lot purchased by the complainant, R. Ellen Patton. Some of these lots, if not all of them, were purchased a number of years before the purchase of the Patton lot. Anna J. Ryan, the purchaser of one of these lots, states, that her deed was admitted to record in 1872. That the purchasers all received deeds for their respective purchases may be inferred from the testimony. O. A. Patton in his testimony in response to the question, " Before the application made by you and Mrs. Patton for the

injunction in this case what persons threatened to you to open the said alley through the property bought by you?" replied, "No one threatened to open it, it was only a general impression made upon my mind by the persons alluded to in the first part of my deposition, in which the claim was set up, that an alley should be made for the benefit of contiguous lots."

It does not appear, that in any of the deeds an alley-way through from Lee to Quarrier street is mentioned or called for. None of the purchasers of the various lots claim any such alley-way except one, so far as the testimony shows. The testimony of only three of the number was taken. Mrs. Ryan says, she claims only what her deed calls for, which is an alley twenty-one feet wide in rear of her own lot; she has that, and it is a matter of indifference to her, whether the alley goes through or not. It would be of no advantage to her. J. B. Noyes, who is named in the bill, testified that his wife and not himself is the owner of the lot mentioned; that neither himself nor wife desire the alley to go through; and that he had never seen a map or plat showing an alley-way through his wife's lot and the Patton lot. Kline testified, that his lot was the first lot purchased; and that a map or plat showing an alley through from Lee to Quarrier street was shown to him by Noyes Rand, who told him, that when the lots were sold the alley should be opened; and he claimed, that the alley should be opened. But he does not state, that his deed calls for such alley. Several of the witnesses speak of having seen a map or plat showing an alley through from Lee to Quarrier street. It does not appear, that this map or plat was ever recorded, or that Patton and wife ever had notice previous to their purchase of such map or plat or of the sale of said lots or any of them upon condition, that an alley should be projected from the one street to the other or through the Patton lot.

The facts in this case are very similar to those in the case of *Deacons* v. *Doyle et al.*, decided by the Court of Appeals of Virginia, and reported in The Virginia Law Journal for March, 1881. Christian, Judge, in delivering the opinion of the court says:

"One R. H. Scott was the owner of a tract of land lying

on the western side of the James river and Kanawha canal, near the city of Lynchburg, extending for some distance up and down the said canal, opposite the property known as the Rolling Mill. It seems, that in the year 1867, Scott had this land divided into convenient lots, twenty-four in number, and sold the same thus divided into lots to various parties at various prices, until he sold them all. Of these lots numbered one, two and seven were purchased by the plaintiff, Doyle. The defendants, the Deacons, are also the owners of two of these lots, one purchased of B. S. Taylor, who had purchased from Scott, and the other they hold under E. B. Snead, who was the purchaser from Scott, and who afterwards conveyed it to Adams, from whom the Deacons purchased. The gist of the controversy is, whether Doyle had a right of way through the lots, which he purchased of Scott, over those, which had been conveyed to the Deacons. In the first place it is distinctly proved as a fact in the cause, not disputed, and must be taken as conceded, that while Scott, the original owner, was in possession of the land, there was no roadway, neither public highway nor road of any kind over this land running along the banks of the canal, nothing to notify purchasers from him of *any claim* either by the public or any private individual to a right of way over this land. It is another noteworthy fact, and one which is conclusive of the case, that in all the deeds filed, both those under which the Deacons claim, and those under which Doyle claims, there is no reservation of any right of way or other easement of any kind over any of these lots; but all the deeds convey the land down to the line of the James river and Kanawha canal."

Judge Christian again says: " The only ground of the plaintiffs' claim is founded upon the deposition of the witness Mitchell, a surveyor, who says in substance, that he surveyed and divided into lots at the request of Scott the tract of land above referred to, and that he suggested, that it would be convenient to have a roadway running along the banks of the James river and Kanawha canal, and that he made the survey and a plat marking out fifteen feet as such roadway. But this plat is not referred to in any of the deeds; nor is there any evidence, that such plat was ever recorded; nor is

there a particle of evidence, that the defendants ever saw or heard of it at the time of their purchase."

Again Judge Christian says: "The principles of law applicable to such a state of facts are plain and well established. They may be stated as follows: 1st. Where at the time of the purchase of real estate there is a road or right of way used by the public, such as a public highway or a road used *so long*, that there may be a presumption of a dedication to the public, the purchaser takes the land subject to such right, and he is not protected even by a deed of *warranty against encumbrances. Jordan* v. *Eve,* 31 Gratt. 1, and cases cited. 2d. Where no private right of way or other easement is reserved in the deed itself, and the purchaser has *no notice* of any such claim, he takes the property without the burthen of any such claim either from the grantor or any person claiming under him. *Scott* v. *Bentel,* 23 Gratt. 1. 3d. Where the deed conveys without reservation, the grantee takes all conveyed by the deed unincumbered, unless in some way *notice is brought home to him,* that the land is sold subject to the encumbrance of some easement or privilege in another person or in the public."

In this case neither in the deed to Mrs. Patton nor in the deeds to the other purchasers is any reference made to any alley-way through the property of Mrs. Patton. No map or plat is recorded, and no notice is brought home to the complainants of any such map or plat or any claim of such alley. Upon the principles of law laid down in the case of *Deacons* v. *Doyle et al.,* which are obviously sound, and are fully sustained by the authorities referred to in that case, it seems to me clear, that there was no ground whatever for the injunction in this case, and that there was no error in the order dissolving said injunction.

One of the errors assigned in the petition is, that in dissolving the injunction costs were awarded, and those costs should not have been decreed until the final hearing at the next term. This was error, but not an error for which the order of the court will be reversed; (*Jones* v. *Cunningham,* 7 W. Va. 707). The order in that respect must be corrected in this Court, and the order dissolving the injunction thus corrected must be affirmed with costs. The order refusing to

reinstate the injunction was not appealable; and therefore the appeal therefrom is dismissed as improvidently awarded; and this cause is remanded to the court below to be there proceeded in, in accordance with the principles of this opinion and the rules governing courts of equity.

THE OTHER JUDGES CONCURRED.

CAUSE REMANDED.