# CHARLESTON.

## SHAVER v. EDGELL.

### Decided December 15, 1900.

1. TRESPASS—*Persons Liable.*

   One who instigates another to commit a trespass is liable, though not present at the act. One present and encouraging the trespass is liable therefor. (p. 504).

2. EASEMENT—*Private Way.*

   Where a decree of partition or deed gives a private way to one tract of land over another, the owner of the tract entitled to such way cannot add to his right by using the way for still another tract owned by him. (p. 504).

3. CONVEYANCE—*Parol Evidence.*

   Where one conveys a tract of land to another, no evidence can be received to prove an oral agreement between the parties that a private way over the land conveyed should exist in favor of the grantor. (p. 505).

4. OWNER—*Oral Agreement—Necessity.*

   Where an owner of contiguous tracts of land grants one a way, he can claim no right of way over it for the use of another tract, even under an oral agreement at the time for such way, without reservation in the deed, unless such way be strictly and absolutely necessary for access to the other tract still vested in the grantor. Such way must be one of indispensible necessity. (p. 505).

5. PUBLIC HIGHWAY—*Purchaser—Public Right.*

   Where a public highway exists, a purchaser of the land on which it takes subject to the public right, whether he have notice of it or not. Where the way is a private one, he takes the land unincumbered by it, unless he has notice of it. (p. 506).

6. DEMURRER TO EVIDENCE—*Waiver.*

   A demurrant to evidence must be considered as admitting all that can reasonably be inferred by a jury from the evidence given by the other party, and as waiving all the evidence on his

own part which contradicts that offered by the other party, or the credit of which is impeached, and all inferences from his own evidence which do not fairly flow from it. (p. 511).

Error to Circuit Court, Harrison County.

Action by Harriet L. Shaver against Thomas B. Edgell. Judgment for plaintiff. Defendant brings error.

*Affirmed.*

Millard F. Snider and Lewis C. Lawson, for plaintiff in error.

John Bassel, for defendant in error.

Brannon, Judge:

Harriet L. Shaver brought an action of trespass on the case against Thomas B. Edgell in the circuit court of Harrison County to recover damages for trespass by entry on the land of the plaintiff, in which a jury found one cent damages for the plaintiff subject to a demurrer by the plaintiff to the defendant's evidence, which demurrer the court decided in favor of the plaintiff, and rendered judgment for the plaintiff. The defendant filed pleas setting up that he was justified in entering the plaintiff's close by reason of a right of way vested in him. The defendant sued out this writ of error.

The defendant makes the point that there is no formal demurrer to evidence, because the evidence is not set out and a formal joinder signed by the parties to the demurrer. All the evidence is stated, and the record states that the plaintiff demurred to the defendant's evidence, and that the defendant joined in such demurrer. Court and parties treated this demurrer as good. Everything necessary to the decision of the case fully appears in the record, and a mere formal joinder signed by the parties would not add a jot or tittle to enable the court to better decide the law of the case upon the facts, and we cannot reverse the judgment upon such unsubstantial ground.

The defendant Edgell would excuse himself from liability on the claim that his son, not himself, did the act of trespass. That act consisted in breaking down the bars in the enclosure of the plaintiff's land and driving a wagon over her land. The evidence makes it plain beyond dispute, even from Edgell's own evidence,

that his son Raymond was told by his father that he had a right to use a way over the land, and that in hauling lumber he would have to pass over the plaintiff's land in order to haul the lumber to the land of the defendant for use thereon. Thus the defendant authorized and advised the act. Not only this; for when young Edgell drove the wagon laden with lumber to the. bars, the plaintiff forbade his entrance, and thereupon he went to his father's house, procured an ax and returned with it, his father accompanying him, and with the ax broke down the bars, which had been nailed up by the plaintiff. The father on the ground told him to break down the bars, very surely encouraged him and approved the act. The wagon was owned by the defendant. The father thus commanded the act, was present on the ground ordering or approving it, ratified it. Under these facts there is no view under which the law would not regard the defendant just as liable as if his own hand did the act. "All persons who direct or assist in committing a trespass are in general liable as principals * * * * and where several are concerned they may be jointly sued, whether they assented to the act before or after it was committed." 2 Tucker Com. 223. Either the father or the son or both may be sued at the election of the plaintiff. "Whoever commands the commission of a wrong by another does that wrong himself, not by actual personal commission, but by constructive identity. If the command or consent to the tort is prior to the wrong complained of, he may be said to have authorized it." "Liability for torts committed by another person may attach by ratification of such wrong." 1 Jaggard, Torts, ss. 13, 14.

Edgell would justify the act on the claim that he had a lawful private right of way through those bars over that land. He bases this right of way on several grounds. First. He says that in the partition of a tract of two hundred and thirty-five acres of land owned by John Robinson at his death, lot No. 1 was assigned to the widow of Robinson, and that the decree of partition provided that "the holders of lots numbers one, six and ten do take and hold them, subject to right of the owners of lots numbers seven, eight and nine to erect, or cause to be erected, a gateway across said first named lots as shown by the blue lines on the plat returned;" and that he had a right of passage under that decree.. Edgell owns lot number ten in that partition.

Edgell and one Hall became the owners jointly of said lot number one assigned for the widow's dower, and afterwards they divided said lot number one between themselves, Edgell conveying to Hall eleven and one-fourth acres of it, and Hall conveying to Edgell forty and three-fourths acres of it. Hall conveyed said eleven and one-fourth acres to the plaintiff, and this is the land upon which the trespass was committed. In fact, that partition has nothing in the world to do with the case, for the plain reason that it gave this right of way in favor only of lots seven, eight and nine, over lots one and ten and six. It made lots one, six and ten servient to lots seven, eight and nine. That puts the partition out of the case. Lot ten had no right of way over lot one by the letter of the decree; but that is immaterial, because the haulage of this lumber was not at all for the use of lot number ten, but was for the use, and in the use, of that part of lot number one yet owned by Edgell, and that part of lot number one was not given by the decree any right of way over the other part of lot number one. Even if lot number ten, owned by Edgell, had a right of way, Edgell could not add to that right the further right of way for the use of his part of lot number one; for as shown by JUDGE EDMISTON in *Springer* v. *McIntire*, 9 W. Va. 196, where a decree of partition gives to one lot a right of way out, the owner of that lot cannot use that right of way for the use of another lot. He said: "It has been held that if a man has a right of way to a close called A, he cannot justify using the way to go to A, and from thence to another close of his own adjoining A." One owning one tract having an easement to it, for it, cannot use that easement over another man's land to subserve the purposes of another tract. "One having a right of way appurtenant to certain land, cannot use it for the benefit of other land to which the right is not attached, although such other land is within the same enclosure with that to which the easement belongs. Except for this rule the burden upon the servient estate might be increased at the pleasure of the owner of the dominant estate." Jones on Easements, ss. 360-61-62. But, in fact, Edgell owns no land having this easement. How can he say that when lot number one was by the decree made servient to other lots, and when he conveyed to another to hold in severalty part of lot number one, that part is by the decree made subject to a right of way for the portion of lot number one held by him

in severalty? That decree gives no color of claim to this right of way for such use of his part of lot number one.

Second. But Edgell would base his right of way on the claim that this way was by public use for over ten years made a public highway. The evidence fails utterly to show this. The most serious burden to which a man's ownership of land can be subjected is that of a public highway. In such case the public is his master, and it requires evidence full, clear and explicit that shall thus deprive an owner of his exclusive use of his property. The burden is upon Edgell to furnish such evidence as is required in such a case. He has not furnished it. Tested by the evidence adduced in his behalf it is shown that while John Robinson lived on lot number one, there was a pathway from the bars to his house, and running on, perhaps, up the run over his land to houses of his children living on the land. It was a road made by an owner on his own land, for his own use. The witnesses are explicit in declaring that it was never a public road. After Robinson's death, while Edgell and Hall owned lot number one, they used this road, or rather path, for the use of their land, as they had the right to do. All that can be said from the evidence tending at all to show a public road is, that some times, and but seldom, neighbors would ride up this path running up the run, and thence cross over the steep hill to go to church over on Elk creek. It was thus used not at all regularly, and by only a few persons, and only for horseback riding or foot passage, and never for vehicles. This amounts to only an indulgence or kindness by the land-owner to his fellow-men and neighbors. There is not a show of any intent on the part of the land-owner to dedicate this way to public use, or to recognize such public use as an adverse right. "The public cannot acquire a right of way by use for the prescriptive period, if the use is by license or permission of the owner. The fact that a landowner has for many years permitted neighbors and summer visitors to pass through his gate and over his land to a beach on the seashore, does not of itself constitute such user as can ripen by lapse of time into a prescriptive right at common law on the part of the public to use the road." Jones on Easements, s. 470. So Edgell cannot excuse himself on the theory that the way was a public one.

Third. Edgell seeks to maintain his claim of right of way on the ground that when he conveyed his interest in lot number one to Hall, it was distinctly understood that Edgell should have

such right of way over the part of lot number one thereafter owned in severalty by Hall. The court excluded evidence offered by Edgell to prove such agreement between him and Hall. I think the court did not err in this. To admit such evidence would be dangerous in the extreme. The estate of man in land would be very precarious, if such were the rule. His deed says he has absolute ownership, unencumbered by the great burden of a right of way; but slippery memory or perjury comes up to contradict the deed and place a heavy incumbrance upon the owner's estate, largely detractive from the value of that estate. The case of *Standiford* v. *Goudy,* 6 W. Va. 364, says that, "When the owner of two tracts of land has used the way to and from one over the other, no matter how long, and he grants the former tract, without mention of any way, unless the way be necessary to the enjoyment of the tract granted, the mere grant of the land does not create or confer a way appendant, appurtenant or in gross." The deed plainly speaks the contract, without any ambiguity, and no oral evidence is at all admissible to alter or explain it, and even if ambiguous, the verbal talk of the parties at the time is not admissible to contradict or explain the deed. *Crislip* v. *Cain,* 19 W. Va. 438, (point 13 syl.); *Towner* v. *Lucas,* 13 Grat. 705. Here Edgell granting all his right in land, seeks afterwards to detract from the legal effect of his conveyance by loading the land with heavy incumbrance of a private right of way for all time. He must reserve that right of way in the deed. Without such reservation he cannot take away from Mrs. Shaver a valuable element in her ownership, by placing an enduring encumbrance upon it. Jones on Easements, s. 136, says: "There is no implied reservation of an easement in case one sells a part of his land over which he has previously exercised a privilege in favor of the land he retains, unless the burden is apparent, continuous and strictly necessary for the enjoyment of the land retained. A grantor cannot derrogate from his own grant, and as a general rule he can retain a right over a portion of his land conveyed absolutely only by express reservation. 'If a man conveys land which is covered by his mill pond, without any reservation, he loses his right to flow it. There is no room for implied reservation. A man makes a lane across one farm to another, which he is accustomed to use as a way; he then conveys the farm without reserving a right of way; it is clearly gone. A man cannot, after he has absolutely conveyed his land,

still retain the use of it for any purpose without an express reservation. The flowing or the way are but modes of use, and a grantor might as well claim to plow and crop the land.'" Jones goes on further to say that it is only in case of the strictest necessity that the principal of implied reservation can be invoked, and cites the case of *Burns* v. *Gallagher,* 62 Md. 471, holding that no easement can be taken as reserved by implication, unless it be *de facto* annexed and in use at the time of the grant, and it be shown, moreover, to be actually necessary to the enjoyment of the estate or parcel retained by the grantor. "And such necessity cannot be deemed to exist if a similar way or easement may be secured by reasonable trouble and expense, and especially not if the necessary way or easement can be provided through the grantor's own property. In order to give rise to the presumption of a reservation of an existing *quasi* easement or easement where the deed is silent, the necessity must be of such strict nature as to leave no room for doubt of the intention of the parties that adjoining property should continue to be used and enjoyed, in respect to existing easements or *quasi* easements, as before the severance of ownership; for otherwise parties would never know the real purport of their deeds. If the grantor intends to reserve any right or easement over the property granted, it should be done by express terms, and not afterwards require a plain grant, it may be for full consideration, to be limited and cut down by any mere implied reservation of privileges over the property granted. It is only in cases of the strictest necessity, and where it would not be reasonable to suppose that the parties intended the contrary, that the principle of implied reservation can be invoked." This doctrine is held in *Scott* v. *Beutel,* 23 Grat. 1. There is a great difference in an implied grant and an implied reservation. If one man grants land to another, he impliedly grants those things absolutely essential for the enjoyment of the land granted, as, for instance, a way over the grantor's land to meet necessity; but he does not reserve a way over the grantee's land for the use of the grantor's remaining land, without he puts in a reservation; for he cannot, by mere implication, derrogate from his own deed by destroying or rendering less valuable what he granted. To say that a grantor reserves that which may be beneficial to him, but most injurious to his grantee, is contrary to the principle on which implied grants depend. That principle is that a grantor shall not detract

from his grant, or render what he granted less beneficial to his grantee. Jones on Easements, s. 127 and notes. Thus the law is strong against the contention for Edgell that either by legal implication or by oral agreement he reserved a right of way over the eleven and one-fourth acres when he conveyed to Hall. The text of the law above given is that he could not claim such implied reservation save on the most absolute necessity for the enjoyment of that part of lot number one, which remained to him in severalty. The evidence shows that no such necessity exists. It shows that his land runs a long distance along the public highway, and there is no obstruction of access to it, save some tolerably steep ground, and that a very usable road can be made to the highway at small expense, ranging from five dollars up to sixty dollars, according to different witnesses, the most reliable putting the cost at fifteen dollars or twenty dollars. That evidence further shows, in fact, that there is already a road and long has been from Edgell's part of number one to the highway, used for horses and cattle and some times for vehicles. Therefore, there is no necessity under which a court of justice should raise up a right of way in favor of Edgell to torture Mrs. Shaver by burdening her land. The enjoyment by Edgell of his land, the full enjoyment, may be had by him without thus crippling Mrs. Shaver's estate. PRESIDENT BERKSHIRE in delivering the opinion of this Court in *Powell* v. *Sims,* 5 W. Va. 1, holds this doctrine as to even ordinary ways of necessity. He relies upon Washburn on Easements and Servitudes 586, which says: "A right of way from necessity over the land of another is always of strict necessity, and this necessity must not be created by a party claiming the right of way. It never exists where a man can get to his property through his own land; that the way through his own land is too steep or too narrow does not alter the case. It is only where there is no way through his own land that the right of way through the land of another can exist. That a person claiming a way of necessity has already one way, is a good plea and bars the plaintiff."

Another theory for Edgell's claim of right of way is, that when Hall conveyed the eleven and one-fourth acres to Mrs. Shaver he pointed out the way, and reserved it orally for Edgell and others. The deed does not say so. For reasons stated above, the court properly excluded that evidence.

Counsel for Edgell insist that when Mrs. Shaver purchased of Hall there lay before her eyes, easy to be seen, this way, and that she was affected with notice of it. No doubt of this being law; but here we must have two things, namely, a visible track, which probably there was, and secondly an existing right of way valid under the law; and the latter is not the case, and the whole argument on this basis falls. If there had been a public road there, the purchaser would have to take notice of it; but there was no public road there. If there had been a valid private way, that would not affect Mrs. Shaver with notice, in the absence of actual notice, which it was proposed to prove she had; but then there was no right of way to have notice of. Whence did it originate? How came it into existence? Under this head counsel rely upon *Patton* v. *Quarrier,* 18 W. Va. 447. It holds that where at the time of purchase of land there is a public road, the purchaser takes the land subject to such rights, and is not protected by a deed of warranty against the incumbrance of that road. In this case there was no public road. That case also holds that where no private right of way is reserved in the deed itself and the purchaser has no notice of it, he takes without the burden of that way; and that where the deed has no reservation, the purchaser takes the land unencumbered by a way, unless he has notice that there is such a way; but this presupposes the existence of a valid prior right of way, whereas in this case there is no valid right of way. Why speak about notice, legal notice, of a thing non-existent? The case of *Patton* v. *Quarrier,* under the facts of this case, lays down legal principles against Edgell's right of defense. It was not a case of reservation by a grantor against his own deed.

For Edgell the point is made that when an estate is partitioned by decree, there exists a right of way out over other lots to the highway. Concede this. But does such right exist, giving Edgell right to invade this eleven and one-fourth acres, when it and his own land constituted one lot in the partition, and when there is no necessity for him to invade the eleven and one-fourth acres, from the fact that he has access to the highway, or ready means of access, without touching the eleven and one-fourth acres? Moreover, that decree dealt with the rights of the various lots as to outlet, and only gave to certain lots a right of way over certain other lots, and did not give lot number one any right of way, because it needed none, and certainly did not give one part

of lot number one outlet over another part, as it was then all together.

It is suggested that when Edgell conveyed the eleven and one-fourth acres to Hall, he conveyed only his undivided interst, meaning to say, if I catch the meaning, that the land being undivided between him and Hall, his conveyance passed only the land; but his right to pass over the eleven and one-fourth acres being an individual right in him, that right did not pass under his deed. I do not see why a deed conveying all the grantor's right, title and interet, though undivided, with general warranty, does not pass every kind of interest the grantor has in the land at the time; or how against the grant, or the warranty, of such a deed the grantor can set up in detraction from his deed a pretended right, or a real right, vested at the date of that deed in him, to the injury of his grantee I fail to see how, when two men own land jointly, and one conveys to the other his interest in a specific portion of it, the deed fails to make the grantee absolute owner in severalty. But for another reason there is nothing in this point. When two men own land together, you cannot say there is invested in either any individualized right of way inhering in him as a distinct, separate easement or right, which does not pass to his fellow when he conveys to that fellow all his interest in a specific portion.

It is true this case stands upon a demurrer to evidence, under which the demurree's evidence is taken to prove all it fairly can prove. Notwithstanding the holding in *Maple* v. *John,* and *Talbott* v. *Railroad Co.,* 42 W. Va. 30 and 560, that the demurrant does not waive his evidence conflicting with that of the demurree, I think the true rule is that he does do so, as held in the cases of *Garrett* v. *Ramsey,* 26 W. Va. 345, and many prior cases, and *Gunn* v. *Railway Co.,* 42 W. Va. 676, and *Bennett* v. *Perkins,* 47 W. Va. 425, (35 S. E. 8). That careful and thoughtful author, Mr. Hogg, sustains the view held by the two later cases just named, which overrule the Maple and Talbott cases logically. In his second edition of Pleading & Forms the subject is ably discussed. On page 537 Mr. Hogg says: "But the province of the court upon a demurrer to the evidence has been settled, as to the effect of the act of 1891, chapter 131, section 9, of the Code, in the recent case of *Gunn* v. *Ohio River Railroad Co.,* 42 W. Va. 676, (26 S. E. 546), which arose and was tried under the said act. It was contended in argument in that case

that the province of the court upon a demurrer to evidence was different from what it had been prior to that enactment. But the court held otherwise, approving the syllabus of *Garrett* v. *Ramsey,* 26 W. Va. 345, upon demurrers to evidence." It is doubtful whether *Talbott v. Railroad Co.* holds the other view. Mr. Hogg construes the case as holding the true view as laid down by him. I say that when the demurrant takes from the jury the demurree's case, the demurrant waives his evidence conflicting with that of the demurree. All the authorities hold this. The act of 1891 was not intended to revolutionize this. It directs all evidence to be considered, but considered under known and established rules. Though in this case I admit such to be the rule, still, I say that the defendant, carrying the burden of proof to establish the defense resting on the existence of a right of way, has failed therein. Under a demurrer to evidence a party carrying the burden of proof must satisfy the demand, as in other cases. I hesitate not to say that if this case had been left wholly to the jury, and it had found a verdict for the defendant, the court must have set it aside as unwarranted by the evidence, and this being so, the circuit court in this case was warranted in giving judgment for the plaintiff upon the demurrer. *Gunn* v. *Ohio River R. R. Co.,* 42 W. Va. 681. Judgment affirmed.

*Affirmed.*