# CHARLESTON.

## Teel *v.* Ohio River Railroad Co.

### Decided March 9, 1901.

1. **Railroad Engineer**—*His Duty as to Obstructors.*

    A railroad engineer who discovers an obstructor on the right of way of his train is not bound to stop his train unless he is aware that such obstructor is in such a helpless condition that he cannot protect himself by avoiding the train, but the engineer's only duty towards such obstructor is to give the alarm signals necessary to warn a person of sound mind and good hearing in time to allow such person to vacate the right of way. (p. 90).

2. **Personal Injury**—*Gross Negligence—Liability.*

    A person, sound of body and mind, who deliberately sits down on the right of way of a train and goes to sleep, or becomes so mentally absorbed as not to keep a proper lookout for such train, is guilty of gross negligence; and if he thereby fails to hear the alarm signals given by the approaching train, and his death follows, the railroad company cannot be held therefor. (p. 91).

3. **Sound Mind Presumed**—*Unless Helplessness Shown.*

    Adults are presumed to be sound of mind and body and capable of avoiding accidents; and, if an adult person is killed on its right of way by a railroad train, the company cannot be held liable until it be shown that such person was in a helpless condition, and that the engineer had knowledge of such helplessness in time to have stopped his train to have prevented such killing. (p. 92).

Error to Circuit Court, Cabell County.

Action by P. M. Teel against the Ohio River Railroad Company. Judgment for defendant, and plaintiff brings error.

*Affimed.*

Switzer & Wiatt and Harvey, Wyatt & Hutchison, for plaintiff in error.

Vinson & Thompson and H. P. Camden, for defendant in error.

Dent, Judge:

P. M. Teel, administrator of George Teel, deceased, obtained

a writ of error to this Court from the judgment of the circuit court of Cabell County sustaining a demurrer to the evidence in a certain case therein pending wherein he was plaintiff and the Ohio River Railroad Company was defendant.

The facts are as follows: George Teel, deceased, was struck and killed by a passing train of the defendant while he was sitting on the platform at Johnston's Grove or Midway Park in Central City, said county. When the engineer discovered him, he was sitting on the platform with his feet near the rail and leaning forward with his head downward. He immediately began to blow the whistle not less than three hundred feet away in a continuous, alarming and distracting manner and when he found this produced no effect, he tried to stop his engine, but he was too close to do so entirely, and some portion of the train struck Teel about the head with such force as to result in his death. There is no dispute about the engineer's sounding the alarm whistle, but the contention of the plaintiff is that the engineer was guilty of negligence in not noticing the helpless condition of Teel and stopping the train in time to save him. The deceased was a young man twenty-five years of age with no physical defects of either sight or hearing, and it is not known that he was either drunk or asleep. The jury found a verdict of two thousand two hundred dollars subject to the demurrer to the evidence.

The question is mooted in this case as to whether this Court in determining a demurrer to evidence is to be governed by the rule as stated in *Maple* v. *John,* 42 W. Va. 38, and approved in *Talbot* v. *Railway Company,* 42 W. Va. 560, or the rule as contended for in Hogg's Pleading and Forms, (2 Ed.) 537, as sustained by *Gunn* v. *Ohio River Railroad Co.,* 42 W. Va. 676; *Bennett* v. *Perkins,* 47 W. Va. 425, (35 S. E. 8), and *Shaver* v. *Edgell,* 48 W. Va. 502, (37 S. E. 664).

The rule as stated in the first cases is that "Upon a demurrer to evidence, the demurrant in this State is not held to waive any of his competent evidence; but where it conflicts with that of the demurree it will be regarded as overcome, unless it manifestly appears to be clearly and decidedly preponderant." *Talbot* v. *Railway Co.,* cited. This rule is deduced from the change in section 9, chapter 131, of the Code, which provides: "In the trial of a case at law in which a writ of error or *supersedeas* lies to the Court of Appeals a party may except to any action or opinion of

the court, and tender a bill of exceptions, and if the action or opinion of the court be upon any question involving the evidence or any part thereof, either upon a motion for a new trial or otherwise, the court shall certify all the evidence touching such question, and the judge shall sign any such bill of exceptions (if the truth of the case be fairly stated therein), and it shall be made a part of the record in the case, and the whole of the evidence so certified SHALL BE CONSIDERED BY THE COURT OF APPEALS, both upon the application for and hearing of the writ of error or *supersedeas.*" It is maintained that this does not apply to demurrers to evidence for the reason that all the evidence even before the statute had to be included in the demurrer, and yet while this is true, the court was not required to consider it all, but might reject the conflicting evidence of the demurrant, and give it no consideration. This law is general, and applies to all cases in which a writ of error or *supersedeas* lies and requires not only a complete certification of the evidence but a full consideration thereof in all cases where such writs lie without exception, thus most certainly including cases in which there is a judgment on demurrer to evidence, and which may be removed by writ of error to the court of appeals.

Before the enactment of this statute a motion to set aside the verdict of a jury was treated as a demurrer to the evidence, and all the conflicting evidence of the party making the motion was disregarded. After its enactment the rule was established that the court must consider all the evidence, whether conflicting or not, and if the verdict of the jury was contrary to the evidence or plainly against the decided and clear preponderance of the evidence or without sufficient evidence it must be set aside. *Johnson* v. *Burns,* 39 W. Va. 658. The rule as contended for by Mr. Hogg in his valuable work, and which he not unjustly claims to be sustained by the later decisions of this Court, is the old rule that in demurring to the evidence, the demurrant must waive all his own evidence, which to any extent conflicts with the evidence of the demurree, and that the court notwithstanding the statute is not bound to consider such conflicting evidence, although it plainly and decidedly preponderates in favor of the demurrant. The principle case on which that careful and thoughtful author relies to sustain his view is *Gunn* v. *Ohio River R. R. Co.,* 42 W. Va. 676. This case, however, is not entirely satisfactory on this question, for while he intimates that such is the rule, JUDGE

BRANNON says on page 681, "The evidence must be interpreted most favorably to the demurree, so that he may have all the benefit which a verdict in his favor by the jury would give him. * * * * If the evidence is such that if there were a verdict in favor of the demurree the court ought not to set it aside, then on the demurrer to the evidence, the court ought to give judgment against the demurrant." This has been a long established rule in arriving at a proper determination of a demurrer to evidence, that is to say, that the demurrer to evidence must be treated as though it were a motion to set aside the verdict of a jury just as a motion to set aside the verdict of a jury is treated as a demurrer to evidence. They both have heretofore stood on precisely the same grounds, and governed by the same principles, each one mutually aiding in the determination of the other. The question now presented is whether they are hereafter to be governed by separate and distinct principles. The above quotation from *Gunn* v. *Ohio Rivr R. R. Co.* would say not. For it still holds that the demurrer to evidence must be still treated as equivalent to a motion to set aside the verdict of a jury, and if the court would not set aside the verdict if in favor of the demurree, it must overrule the demurrer, and on the other hand if from the evidence it would set aside the verdict, then the demurrer must be sustained.

If, as claimed in the later case of *Shaver* v. *Edgell,* 48 W. Va. 502, (37 S. E. R. 664), the rule as to demurrer to evidence remains untouched by the statute, then we can no longer determine such demurrer by analogy to the verdict of a jury unless it be a verdict founded on the demurree's evidence alone exclusive of all conflicting evidence on the part of the demurrant. That is to say, that though the evidence considered as a whole plainly and decidedly preponderates in favor of the demurrant, and although the court would set aside a verdict thereon in favor of the demurree, yet because of the demurrer, the plain and decided preponderance of the evidence must be wholly disregarded and judgment rendered in favor of the demurree, if there is any evidence tending to prove his case. If such be the law, the party in whose favor the conflicting evidence plainly and decidedly preponderates should not demur to the evidence and thereby give his case away, but he should move the court to instruct the jury to find a verdict in his favor, which has heretofore been considered equivalent to a demurrer to evidence, but which should now be con-

sidered otherwise under the statute, if construed not to relate to demurrers to evidence. To secure consistency in our decisions and preserve the proper analogy between demurrers to evidence and motions to set aside verdicts and enforce the law as written, the construction of the statute should be adhered to as made in the cases of *Maple* v. *John* and *Talbot* v. *Railroad Co.,* cited. The true rule it seems should be that the demurrant waives all his evidence which conflicts with the evidence of the demurree, unless such conflicting evidence plainly and decidedly preponderates in the demurrant's favor, at least to such an extent that the court by reason thereof would set aside the verdict of a jury in favor of the demurree. When such a case presents itself to the court, it will be time enough to settle it, and until then the old rule as stated in *Shaver* v. *Edgell,* 48 W. Va. 502, (37 S. E. R. 664), is broad enough to cover all ordinary cases.

The question then presented to the court would be whether although the evidence plainly and decidedly preponderates in favor of the demurrant to such an extent that the court would set aside the verdict of the jury, if in favor of the demurree or would have sustained a motion to instruct the jury to find a verdict in favor of the demurrant, yet because of the demurrer judgment must be entered in favor of the demurree contrary to the plain and decided preponderance of the evidence. The present case presents no such question, for the reason that the evidence in so far as it is material to the determination of the controversy does not seriously conflict. Rejecting all the conflicting testimony it appears that the decedent being strong and healthy in mind and body, knowingly and deliberately seated himself in a place of danger, the engineer who was running his train rapidly saw his condition and to warn him sounded the alarm whistle to such an extent as to arouse the whole neighborhood. He made no change of position. The engineer on approaching nearer came to the conclusion that he was not going to move and immediately plugged the engine to stop the train, too late to save him. From the fact he did not move arises the presumption that he was either asleep, drunk, paralyzed or indifferent to consequences amounting to suicidal mania. There is no positive evidence of any of these things. The whole rests on mere conjecture. The truth with regard to his condition or the circumstances that controlled his actions must forever remain a tale untold. The only question here presented is, did the engineer discover that he was

in a helpless condition in time to save his life? The engineer discovered him and recognized his dangerous position and began to use the means at his command to warn him, but there is nothing showing that the engineer could possibly know that his condition was helpless, except the fact that he did not move until he was struck and killed, and this was a matter the engineer could not know until after it actually occurred, and hence it could not possibly be preventive in its nature. The engineer not knowing that the condition of the decedent was helpless, was not bound to stop his train, for he had a right to presume even up until he was struck that decedent would avoid the danger that threatened him by instantly getting out of the way. For there is nothing to show the court even now that the condition was one of helplessness rather than one of total indifference to consequences. He had been shortly before warned of his dangerous position, and had made response to the person giving him warning, thus tending to show that he was perfectly conscious of his conduct and responsible for his actions. He was not an infant, he was not lying helplessly upon or across the track, but he was sitting on the platform with his head bowed, as though in meditation or asleep. Therefore, there was nothing to indicate to the engineer that he was in such a helpless condition that he could not avoid being struck by the train up until the very instant thereof. It is true that the engineer did, through fear of his helplessness, endeavor to stop the train, too late to save him. This he was not bound to do unless he was aware that the decedent's condition was so helpless that he was unable to protect himself. As in the case of a mere infant, a paralyzed, drunken, insane, or totally unconscious person, or one fastened to the tract. The size and position of the person would indicate to the engineer helplessness. But a sitting posture with the head bent forward and leaning on the hand is not an indication of helplessness, although it might be of sleep or partial intoxication or deep meditation from which a person could be aroused by the sounding of the alarm whistle or the noise of the train. The decedent placed himself in a condition of danger where the company had the right of way with its trains, and it was his duty to keep a lookout for the same. This he neglected to do. Of his negligence there can be no question. It was the duty of the company on discovering his dangerous position to warn him by ringing the bell or blowing the alarm whistle, and this it did, and unless he was

helpless and this fact was known to the engineer, this is the only duty the company owed to him, for otherwise it was his duty to give them the right of way. It was a paramount right which the company enjoyed from the public, and of which he could not deprive them by the obstruction thereof in any manner. Was he helpless? Nothing that happened prior to his death so indicated. Such a thing might be inferred from his death, and yet it might also be inferred that he was in a condition of reckless indifference to his fate, or assuming the risk of the train striking him. In either event the engineer could not know what his condition was, and not knowing that he was helpless, the engineer had the right to assume that he would get out of the way. Unless it is plainly apparent to the engineer that the person obstructing the right of way, for some reason, is helpless, the engineer is not bound to stop his train, and he is not guilty of negligence if the obstructor is killed. Such killing comes under the head of unavoidable accident if the person be actually helpless, but if not helpless then it must be charged entirely to the negligence of the obstructor.

The present case is governed by the principles of *Raines* v. *Railway Co.,* 39 W. Va. 50. This, however, is a stronger case in favor of the defendant, for the reason that the engineer did his full duty in sounding the alarm whistle. In the *Raines Case,* as shown in my dissenting opinion, the alarm whistles were given too late to warn the obstructor. In the present case they were given in time, and with force enough to arouse the neighborhood. In 2 Ror. R. R., 1027, the law is stated to be that "The servants in charge of a train have a right to presume that a man on the track is of sound mind and good hearing, and will get off in time to avoid danger, * * * * and therefore, the train is not obliged to stop, but is only bound to ordinary care of warning by whistling and bell ringing, if the person is seen by persons in charge of it, which is due to all persons on general principles. This done in time for avoiding the danger the company is not liable." The engineer has the right to continue the speed of his train on the presumption that the obstructor of the right of way is of sound mind and good hearing, and will protect himself until it becomes plainly apparent to him that the obstructor is helpless, then if necessary to avoid the destruction of life or bodily injury he should stop his train. Neither the engineer nor other person knows that decedent was helpless, but as soon as it

seemed apparent to the engineer that the decedent for some reason was not trying to protect himself, he tried to save him rather under a feeling of moral than legal obligation, for not being aware that the obstructor was in a helpless condition, he was not legally bound to do so, but could have continued the speed of his train and cast the responsibility of the accident upon the obstructor or his unknown helplessness. The fact that he did more than the law required of him is not evidence that he was aware that the condition of the obstructor was helpless, nor is there any evidence of this fact except inconclusive inferences drawn from decedent's death.

This is cetrainly a case plainly for the defendant, and the circuit court committed no error in sustaining the demurrer to the evidence.

The judgment is affirmed.

*Affimed.*