# CHARLESTON.

### B. H. BLAGG, ADMR. v. BALTIMORE & OHIO RAILROAD CO.

### Submitted February 18, 1919.    Decided February 25, 1919.

1. RAILROADS—*Operation—Licensee— Care ` Required.*

    One not in the employ of a railway company, using its tracks as a walk way over a portion thereof which pedestrians are accustomed to use for such purpose, but not at a public crossing, is at most a mere licensee, and such railway company owes to him no higher or other duty than it owes to a trespasses. (p. 452).

2. EVIDENCE—*Admissibility—Res Gestae.*

    Whenever a statement is made by one under such circumstances that it may be regarded as spontaneous and as the direct result of a transaction to which he was a party, it becomes a part of the transaction itself, and if proof of the fact is material to the inquiry being made such statement will be received in evidence as tending to establish such fact. (p. 453).

3. RAILROADS—*Licensee—Personal Injury—Liability.*

    A person using a railroad track as a foot path for his own convenience elsewhere than at a public crossing, and injured by a train while so doing, cannot recover damages from the railroad company, unless it be shown that after he was discovered upon the track by the employes or servants of the railroad company they did not use reasonable care to avoid injuring him. (p. 453).

4. TRIAL—*Instruction—Evidence.*
> It is error to give an instruction based upon an hypothesis which is not supported by any evidence. (p. 454).

Error to Circuit Court, Mason County.

Action by B. H. Blagg, administrator of Raymond Bennett, deceased, against the Baltimore & Ohio Railroad Company. Judgment for plaintiff, and defendant brings error.

*Reversed and remanded.*

*Rankin Wiley,* for plaintiff in error.

*B. H. Blagg* and *Somerville & Somerville,* for defendant in error.

RITZ, JUDGE:

This writ of error is prosecuted to a judgment in favor of plaintiff for damages occasioned by the death of his decedent, Raymond Bennett, caused by the alleged wrongful act of the defendant. Bennett was killed on the 26th day of August, 1913, by being run over on the tracks of the defendant near its station of Point Pleasant. The evidence shows that a north-bound train of the defendant, containing a locomotive, tender, and three cars, just a short distance north of defendant's station of Point Pleasant, ran over the defendant about seven o'clock on the morning of August 26, 1913, and so badly injured him that he died in a few minutes after the accident. As to how long Bennett was on the track before he was struck by this train, as to when he came on the track, what efforts were made to stop it before he was struck, whether or not the engineer saw him in sufficient time to have stopped the train before it struck him, there is no evidence. The testimony for the plaintiff, by one witness, shows that she lived near the railroad track, at the point where the accident happened; that she was in her kitchen eating breakfast at the time she heard the locomotive give quick short blasts of the whistle indicating the possibility of an accident; that she quickly got up from the table and went rapidly to her front door which was just across another room, the door between the kitchen and this room, and the front door, being open at the time, and that when she got to her front porch the train had

run over Bennett, and he was still under it; that by the time
the train stopped it had passed entirely over his body and
left it remaining a few feet to the rear of the train. She
does not undertake to state when Bennett got on the track;
in fact she did not see him until after he was run over, nor
does she undertake to say how far the engine was from him
at the time he was discovered. The only reasonable inference
that can be drawn from her evidence is that it must have been
very close from the fact that she, moving as rapidly as she
conveniently could, only crossed the front room of her house
from the time she heard the first alarm given until the train
had run over him. She does state in her evidence that the
train had not slowed down from the time it first began to
whistle until she first saw it, or until after it had run over
Bennett. Manifestly she could not know whether the train
had slowed down before she saw it or not. She does state,
however, that the train stopped when the last car had passed
just a few feet beyond Bennett's body, and when the engine
was just up to a trestle a short distance north of where Ben-
nett was struck. Another witness testifies that he was work-
ing at a house near the place of the accident, and that he
saw Bennett struck by the train on the trestle above referred
to. This tesimony is denied by the physical facts shown that
Bennett's body was south of the trestle at the time it was
run over, and at the time it was recovered, and that the train
had stopped before going upon the trestle. Manifestly this
witness was confused in his statements, and they are not to be
relied upon, being in direct conflict with the physical facts
indisputably shown. He does not, however, undertake to say
how long Bennett had been on the track at the time the en-
gineer discovered him, or before he was struck, or what if
any efforts were made to prevent his being struck after he was
discovered. He does state that the train was running forty
to fifty miles an hour at the time he observed it, and his
statement in this regard is all of the evidence as to the speed
of the train. Another witness who came upon the ground
very shortly after the accident observed what he presumed to
be the place where Bennett was hit. He found at this point
Bennett's dinner bucket with his dinner spilled upon the

ground, and also marks of blood and mangled pieces of his clothing and remains. This point, this witness says, was a little bit closer to the trestle referred to than it was to the Point Pleasant station. He says that he stepped off the distance from this point to a point in a southerly direction, at which the plaintiff's decedent would have been observable had he been upon the track, and he finds that plaintiff's decedent could have seen two hundred and sixty-five steps from the point at which he was hit, but he does not undertake to say that the engineer saw him at any such distance, or that he was even upon the track at the time the engine was that distance away. In fact, as before stated, there is no proof in this case as to when Bennett came upon the track, how long he had been upon the track before he was hit by the engine, how far the engine was from him at the time he was discovered, or as to whether or not the engineer could have, in the exercise of ordinary care, prevented the injury after discovering Bennett upon the track. In this state of the case the defendant requested a peremptory instruction to find in its favor, which was refused, and certain instructions given on behalf of the plaintiff to which objection was made. The jury found a verdict in favor of the plaintiff for the sum of one thousand dollars, and after overruling defendant's motion to set it aside the court rendered judgment thereon.

There is some attempt made to show that the defendant's track at the point at which Bennett was killed had been frequently used by pedestrians going to and from their work, and by others having occasion to use the same as a walk way or pass way. The evidence upon this, however, is not very satisfactory, and it does not appear that the track was used for this purpose to a very much greater extent than railroad tracks are ordinarily used for such purposes. However, this can make no difference so far as the duty which the defendant owed to the plaintiff's decedent is concerned. He would be a mere licensee at most, and the defendant company owed him no other or different duty than it owed to a trespasser. *Bralley* v. *Railway Co.*, 66 W. Va. 462; *Woolwine's Admr.* v. *Railway Co.*, 36 W. Va. 329; *Poling* v. *Railroad Co.*, 38 W. Va. 645; *Melton* v. *Railroad Co.*, 64 W. Va. 168; *Tompkins* v. ?? W. Va.

*Sunday Creek Co.,* 68 W. Va. 483; *Norfolk & Western Railway Co.* v. *Bondurant,* 107 Va. 515; *Norfolk & Western Railway Co.* v. *Denny,* 106 Va. 383; *Nesbit* v. *Webb,* 115 Va. 362; *Chesapeake & Ohio Railway Co.* v. *Saunders,* 116 Va., 826.

On the trial of this case the court permitted a witness to testify that he came to the station at Point Pleasant immediately after the accident, and that the engineer in charge of the train made a statement to the effect that he saw Bennett in the middle of the track and blew for him, but the man did not seem to hear the alarm, apparently for the reason that there was a train going over the K. & M. at the time. It is complained that this statement was improperly admitted. The theory, of course, upon which it is sought to justify the statement of the engineer is that it is part of the *res gestae.* It appears that it was made in a very few minutes after the accident happened, and under such circumstances as that it might well be assumed that it was a spontaneous and voluntary outburst. We think under the rule laid down in *Starcher* v. *Oil Co.,* 81 W. Va. 587-601, this statement was properly admitted as part of the *res gestae.* The circumstances under which it was made and its substance particularly characterize it as a spontaneous utterance, the natural result of the accident.

But does the evidence in this case justify the jury's verdict? It must be borne in mind that a railroad company owes to a trespasser or mere licensee discovered upon its tracks only the duty not to injure him if it can be avoided. Primarily the railroad is built for the purpose of operating trains thereon, and such trains are entitled to the use of the tracks free from obstruction by trespassers, and one who goes upon such tracks at a point other than a public crossing, where he has a right to be, is charged with this knowledge. Of course, it cannot be said, that if a trespasser or a mere licensee is discovred upon the track, the employes of the company owe no duty to him. It seems to be well established that in this event there is an obligation to give an alarm in order to inform him of the approach of the train, and if he does not heed such alarm, then the employes must resort to such other means as may be available to prevent injuring him if possi-

ble, such as giving a second alarm, or reducing the speed of
the train, or even stopping it if this can be done. *Bralley* v.
*Railway Co.*, 66 W. Va. 462; *Teel* v. *Railroad Co.*, 49 W. Va.
85; *Spicer* v. *Railway Co.*, 34 W. Va. 514; *Huff* v. *Railway
Co.*, 48 W. Va. 45. There is not the slightest evidence in this
case to show when plaintiff's. decedent came upon the rail-
road track, or that he was discovered thereon within such time
as that the train could have been stopped and the injury pre-
vented. In fact, the only reasonable deduction from the evi-
dence presented is that plaintiff's decedent was discovered
upon the track only a few seconds. before he was. hit. There
is no evidence to show, even assuming that Bennett had been
on the track for sometime before the train hit him, that the
train, at the speed at which it was running, could have been
stopped after he was discovered, assuming that he was dis-
covered as soon as the engineer might have seen him. There
is no evidence to fix negligence upon the railroad company,
or any of its employes, and unless this is done there is no
right of recovery.

Complaint is made of instructions given on behalf of the
plaintiff. The first of these instructions tells the jury that
if the engineer saw Bennett on the track it was his duty to
give an alarm, and in case the alarm was unheeded it was
the duty of the engineer to adopt additional measures of
precaution, such as a repetition of the signal, and if neces-
sary to check the speed of the train. This is a correct state-
ment of a general principle of law, but what evidence is there
in this case to justify some of the hypotheses assumed by the
instruction? This instruction assumes that Bennett ·did not
heed the alarm when given, and this assumption may be jus-
tified from the fact that he did not get off the track. It fur-
ther assumes that the enginer had opportunity to check the
speed of the train, or to give the second alarm, and did not·
do so. There is no evidence of this. The second instruction
likewise states a correct proposition of law, but the hypothe-
ses contained therein find no support in the evidence. The
third instruction tells the jury that if Bennett was seen by
the engineer in charge of the train on the right-of-way of the
defendant company in such close proximity to the track as to

be in danger, it was then the duty of the engineer to take such precaution for his safety as the circumstances reasonably dictated.   There is no basis in the evidence for the hypothesis that Bennett was upon the right-of-way so close to the track as to be in danger.   If the evidence shows anything, it shows that he was on the track.   Then, too, this instruction is indefinite in advising the jury that it was the duty of the engineer to take such precautions by signalling or otherwise as the circumstances reasonably dictated.   It should have been more definite in this regard, and directed the jury just what things the engineer should have done, and not left the jury to speculate or wander at large as to the duty of the engineer under a particular state of facts.   While these instructions correctly propound propositions of law, the hypotheses upon which they are founded find no support in the evidence offered, and they were therefore improperly given.

It follows from what we have said that the judgment of the circuit court will be reversed, the verdict of the jury set aside, and the cause remanded for a new trial.

*Reversed and remanded.*