## CHESAPEAKE & O. RY. CO. v. CRAFT.

### No. 5576.

Circuit Court of Appeals, Fourth Circuit.

May 13, 1947.

Amos A. Bolen of Huntington, W. Va. (C. W. Strickling and Fitzpatrick, Strickling & Marshall, all of Huntington, W. Va., on the brief), for appellant.

Douglas Bowers of Beckley, W. Va. (L. L. Scherer and Scherer, Bowers & File, all of Beckley, W. Va., on the brief), for appellee.

Before PARKER, SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

William T. Brown, who was totally deaf and sixty-eight years of age, was killed on July 14, 1945, by a local passenger train of the Chesapeake and Ohio Railway Company which approached him from the rear as he was walking along the railroad tracks near Mt. Hope, West Virginia. This suit was brought by the administratrix of his estate in the state court and was later removed to the federal court on the ground of diverse citizenship. The principal question is whether there was evidence tending to show that the Railway Company was negligent under the doctrine of last clear chance, in that the engineer failed to realize that the deceased did not hear the warning whistles and failed to stop the train while there was still time to do so. The District Judge overruled the defendant's motion for a directed verdict in its favor and submitted the case to the jury which rendered a verdict in favor of the plaintiff in the sum of $4,500.

The accident occurred about 4 p. m. on a four per cent. curve at a point on the track 1166 feet east of Turkey Knob which is a flag stop on the passenger run of the line. The track runs in a generally east and west direction in this vicinity. The train consisted of an engine, a passenger car and a baggage car. It had stopped at Turkey Knob and was proceeding thence eastwardly. The engine was in the lead but was running in reverse, and the engineman, who had served the Railway Company for forty years, was on the north side of the engine. A side track, located

about 10 feet to the north of the main track and parallel thereto, runs from Turkey Knob to the place of the accident where it connects with the main track. There was a clear view of the site of the accident for a distance of 420 feet as the engine approached from the west. The train was on time and was running at a speed of 10 miles per hour, according to the testimony of a passenger, and at a speed of 15 miles per hour, according to the testimony of the engineer. If running at 10 miles an hour it could have been stopped in 65 to 70 feet, and if running at 15 miles per hour in 110 to 115 feet.

It was customary for persons in the community to walk along the railroad right-of-way in this neighborhood. Prior to the accident, Brown had been sitting on the steps of a schoolhouse 100 feet south of the tracks and 800 feet east of Turkey Knob. He left the schoolhouse and walked across the main track at about the time the train was stopped at Turkey Knob, and then walked eastwardly toward Mt. Hope on the north end of the cross-ties of the main track at a moderate gait with his head down in what appeared to be a normal manner. The train blew a whistle when it was 700 feet west of the place of the accident, and at that time Brown was between 500 and 600 feet ahead of the train and still walking on the north end of the ties of the main line. A second whistle was blown when the train was 453 feet from the scene of the accident while Brown was still walking on the ties. When the whistles were sounded, the engineer was looking in the direction of Brown and there was nothing to obstruct his view of him.

Brown gave no indication that he heard the signals but continued to walk in the same manner until he was hit. While the train was traveling a distance of 247 feet in the interval between the two whistles, Brown covered approximately 49 feet, assuming that the train was traveling at the rate of 15 miles and Brown at the rate of 3 miles per hour. Consequently Brown was not less than 352 feet ahead of the train when the second whistle was blown and in full sight of the engine. Since the train could have been stopped in 115 feet, if it was traveling at the rate of 15 miles per hour, the question is whether the engineman should have realized that Brown's failure to heed the signals was due to some abnormality or disability on his part, and whether the engineman should have stopped the train before hitting Brown.

This recital of the facts is based on the testimony considered in the light most favorable to the plaintiff's case. The engineer testified that he was looking ahead along the track and first saw Brown when he was from 160 to 200 feet ahead, walking in the middle of the side track, and that when the train got within 10 or 12 feet of Brown, as he was nearing the junction of the side track and the main track, the whistle was blown and the emergency brake put on, but the train could not be stopped in time to avoid hitting Brown at the junction. The train was stopped in approximately 156 feet. It will be noticed that the engineer placed Brown in the middle of the side track rather than on the north end of the ties of the main track, as indicated by the plaintiff's testimony; and that the engineer gave no explanation as to why he did not see Brown until he was within 160 feet of him although Brown was plainly visible from the engine from a much greater distance as it approached him from the rear.

The courts in West Virginia have had occasion not infrequently to enunciate the rule of law applicable to situations of this kind; and in their earlier decisions have exonerated the railroad company from responsibility under circumstances difficult to distinguish from those in the case at bar. Thus in Raines v. Chesapeake & O. Ry. Co., 39 W.Va. 50, 19 S.E. 565, 24 L.R.A. 226, a verdict for the defendant was in effect directed in the case of a man who was killed as he walked slowly on the railroad tracks reading a paper and was struck from behind by a train running at 15 or 20 miles per hour. He gave no heed to a whistle blown when the train was some 500 feet distant from him, and the engineer, although the man was in plain sight, did not attempt to stop the train until it got within 20 or 30 feet of him when four or five quick whistles were given and ineffectual attempts to avoid striking him were made when it was too late. The acci-

dent occurred as the train was passing through a small town where footmen were accustomed to use the track without objection. In approving the directed verdict, the court said:

"A railway company running its train is bound, for the safety of such train, to keep a reasonable lookout for trespassers on its track, and is bound to exercise such care as the circumstances require, to prevent injury to such trespasser; but, having given the signal required by law, it has a right to presume that the trespasser, apparently a capable person, will exercise his senses, and seasonably remove himself from danger,—that he can and will protect himself,—so it need not diminish its lawful speed, and, if [the employes of the company] omit no duty after becoming aware of his peril, the [company] will not be responsible for a resulting injury; but if [the employes] know him to be deaf or helplessly drunk, or otherwise specially in danger, or if the person be a child too young to appreciate or avoid the danger, and if they neglect a reasonable warning, but keep on and inflict damage, the [company] will be responsible for an injury to such trespasser if it be guilty of willful or wanton or gross negligence." 39 W.Va. at page 56, 19 S.E. at page 567, 24 L.R.A. 226.

\* \* \* \* \* \*

"I know of no rule, and can find no case, making it the duty of the engineer, under such circumstances, not to approach a man walking on the track nearer than the distance within which the train can be stopped,—say two hundred feet in this case." 39 W.Va. at page 60, 19 S.E. at page 568, 24 L.R.A. 226.

\* \* \* \* \* \*

"Common sense and common justice, applied to the practical affairs of managing railroads and running of trains require that there must be left to engineers some margin for forming their judgment, which may still be discreet, and some latitude of conduct which may, in either event, be held to be prudent. He will not, on pain of conviction of negligence in a matter involving life and limb, be held to make, on the spur of the moment, a nicely accurate estimate of the probability that one walking on the track is insensible of his danger, from the mere fact that he is on the track within a distance within which the train cannot be stopped; for common observation shows that persons fully aware of the approach of the train cross the track, or fail to step off, although the train may be within such distance, for one second or a half second in time, and two steps or three in distance, will put him out of danger." 39 W.Va. at page 62, 19 S.E. at page 569, 24 L.R.A. 226.[1]

It is clear, however, from later pronouncements of the Supreme Court of Appeals of West Virginia that a stricter view is now taken of the responsibilities of a railroad company when the operators of one of its trains observe a person in a position of danger on tracks customarily used by pedestrians in the vicinity. There is the duty then to use care suitable to the circumstances, and while the presumption still prevails that the reaction of the plaintiff to warning signals will be normal and that he will quickly seek a safe position, yet if his actions are such as to indicate to the trainmen that he is oblivious to the signals or cannot or will not respond to them, they must promptly use every reasonable effort to stop the train and avoid an injury. We think that this statement is justified by the later decisions of the West Virginia court.

A case quite like the one at bar, in that

---

[1] See also Teel v. Ohio River R. Co., 49 W.Va. 85, 38 S.E. 518. Certain principles announced in the Raines case were expressly approved in Connelly v. Virginian Railway Co., 124 W.Va. 254, 259, 260, 20 S.E.2d 885, where the Railroad Company was adjudged free from negligence in the case of a man who was killed when sitting or lying on the track, notwithstanding that prompt but ineffectual efforts were made by the train crew who were keeping a reasonable lookout to stop the train and save him as soon as the dangerous situation was noticed. The court gave approval to the statement in the Raines case that if an apparently capable person is seen walking on a railroad track, the servants of the company, having given signals as required, have a right to act on the presumption that the person will step aside in time to remove himself from danger.

the injured man was deaf, is Wendell v. Payne, 89 W.Va. 356, 109 S.E. 734. The plaintiff was walking on a railroad track generally used by people in the locality when a locomotive and tender going from 15 to 20 miles per hour came up behind him. He was observed and danger signals were given from the engine when he was 350 feet ahead. The engine could have been stopped within 110 feet at the speed it was making. The man, being unable to hear, proceeded as before; he plainly indicated that he was paying no heed to the approach of the engine which did not decrease its speed until it was a very short distance from him when it was stopped as quickly as possible, but too late to avoid the injury. The court did not overlook its early decision in Raines v. Chesapeake & O. Ry. Co., 39 W.Va. 50, 19 S.E. 565, 24 L.R.A. 226, but referred to it for a statement of the general principles. The court, however, said (89 W.Va. at pages 361, 362, 109 S.E. at page 736):

" * * * While it was gross negligence of this plaintiff to walk upon a railroad track where trains were likely to pass, and especially so because he had been cautioned not to use them, yet it was still the duty of the servants of the company to use the ordinary care. His great carelessness will not excuse theirs, if they failed to exercise reasonable care after discovering him. His carelessness or infirmity does not change the rule of ordinary care on the part of the company, now well settled in this state.

"It is also well settled that, after discovering a trespasser or licensee on the track, it is the duty of those operating the locomotive to give warning of its approach in ample time, and if there be no response to the warning, or anything about the licensee's actions indicating that he has not heard, or anything unusual in his demeanor reasonably suggesting that he is not in use of his facilities, and that he is making no effort to avoid the approaching danger, then they must bring the train under control, if possible, and avoid the injury. It would serve no useful purpose to review our numerous cases announcing these principles."

Other West Virginia decisions employ this later emphasis upon the responsibility of the railroad to a person upon the railroad track who appears to be unaware of an approaching train by reason of inattention or disability. We refer particularly to Bralley v. Norfolk & W. Railway Co., 66 W.Va. 462, 66 S.E. 653, the case of a drunken man killed on the track, and to Blagg v. Baltimore & O. Railroad Co., 83 W. Va. 449, 98 S.E. 526, and Hough v. Monongahela West Penn P. S. C., 117 W.Va. 272, 185 S.E. 769, where persons were struck down on the track when they were seemingly unconscious of the imminent danger in which they stood. While the court was careful in each of these cases to recognize the rule that trainmen may act upon the presumption that a normal person who is upon the track will seek a place of safety when the warning signals of an approaching train are given, the court also stated the qualification that if the trespasser fails to respond in any way to the signal, additional precautions must be taken, such as a repetition of the signal or reducing the speed of the train, or even stopping it if it is possible to do so when it is realized that the pedestrian is oblivious to the danger. For example, the following statement was made in Blagg v. Baltimore & O. Railroad Co., 83 W.Va. 449, at pages 453, 454, 98 S.E. 526, and quoted with approval in Hough v. Monogahela West Penn P.S.C., 117 W.Va. 272, at pages 274, 275, 185 S.E. 769, 770:

" '* * * Primarily the railroad is built for the purpose of operating trains thereon, and such trains are entitled to the use of the tracks free from obstruction by trespassers, and one who goes upon such tracks at a point other than a public crossing, where he has a right to be, is charged with this knowledge. Of course, it cannot be said that if a trespasser or a mere licensee is discovered upon the track, the employees of the company owe no duty to him. It seems to be well established that in this event there is an obligation to give an alarm in order to inform him of the approach of the train, and, if he does not heed such alarm, then the employees must resort to such other means as may be avail-

able to prevent injuring him, if possible, such as giving a second alarm, or reducing the speed of the train, or even stopping it if this can be done. Bralley v. Norfolk & W. Railway Co., 66 W.Va. 462, 66 S.E. 653; Teel v. Ohio River Railroad Co., 49 W.Va. 85, 38 S.E. 518; Spicer v. Chesapeake & O. Railway Co., 34 W.Va. 514, 12 S.E. 553, 11 L.R.A. 385; Huff v. Chesapeake & O. Railway Co., 48 W.Va. 45, 35 S.E. 866.' "

In view of these decisions, we find no error in the conclusion of the District Judge that it was for the jury in the pending case to say whether the engineer was negligent in failing to check the train until it was too late to avoid the accident; nor do we find error in the instructions upon which the case was submitted. The Railway Company objects to a portion of the charge in which the Judge directed the attention of the jury to certain inferences logically deducible from the testimony, warning the jury at the same time that what he had to say was not binding upon them, and that they were the sole judges of the facts. He suggested that the jury might infer from the sounding of the first whistle that the engineer saw the man on the tracks with his back to the train in a position of danger and thought that a warning was necessary; and also that the jury might infer from the sounding of the second whistle shortly thereafter that the engineer, noticing that the man had given no heed to the first whistle, believed a second one was needed. In this connection the court told the jury that if they thought that after the second whistle the engineer had plenty of time to stop, and that he continued to look at the man and saw that he did not give any evidence of having heard the whistle, the jury might logically infer that he was guilty of negligence by his failure to use reasonable care under the circumstances.

It is objected that this portion of the charge was erroneous because it did not take into account the presumption that a normal person will remove himself from a position of danger upon the sounding of a warning signal, and that this presumption relieves the Railway Company from liability unless knowledge of the injured man's unawareness of danger is brought home to the Railway Company in time to prevent the accident. We do not think that the objection is well founded. The Judge was performing his proper function in commenting upon the evidence, and he did not fail to emphasize the presumption upon which the appellant relies or to state the theory upon which its defense was based. Prior to the portion of the charge objected to the Judge commented upon the evidence of the engineer to the effect that he saw the man four carlengths away on the track and expected him to get off and did not realize that he was not going to do so until he was only 20 feet or less away from him when the whistle was sounded and the emergency brake applied. The Judge specifically instructed the jury that if they believe these circumstances, they ought to find for the Railway Company because the Railway was under no duty to stop until the engineer became aware of the fact that the man on the track was not going to get off. In addition the Judge instructed the jury as to the general principles governing the situation in the following language: " * * Railroads operate their trains on certain fixed schedules. They cannot be expected to stop every few minutes and then start up again and so it has grown to be a reasonable principle and it is the law, that an engineer is not required to stop his train if he sees somebody on the track ahead, and if that person seems to him to be a normal person, in possession of his faculties, who will get out of danger when he hears the train coming; in other words, who will take care of himself and see to his own safety; he is not required to stop his train. His only duty, up to the time that he realizes, if he does realize, that the man is oblivious to his danger, his only duty is to refrain from wantonly injuring him or killing him. But there may come a change in that duty and there does come a change in it if the engineer, who is driving the train, becomes aware of the fact that the man ahead of him is helpless in the sense that he is oblivious to his danger, he does not know that he is in any danger, and if the engineer becomes aware of that fact and still has time to stop, then it is

his duty to exercise reasonable and ordinary care to bring that train to a stop without running into the man who is on the track before him."

These instructions were at least as favorable to the railroad as they should have been, for the jury might have been told that the obligation of the engineer to check or stop the train arose when he became aware, or by the exercise of reasonable care should have become aware, that the deceased was oblivious of his danger.

The judgment of the District Court is affirmed.