# Richmond.

## JOHN FLOWERS v. VIRGINIAN RAILWAY COMPANY.

### March 15, 1923.

1. CONFLICT OF LAWS—*Railroads—Injuries on or Near Track.*—In the instant case, an action against a railroad for personal injuries sustained when struck by an engine, the accident occurred in West Virginia.

   *Held:* That the substantive law of the State of West Virginia was controlling.

2. RAILROADS—*Injuries On or Near Track—Licensees—Law of West Virginia.*—Persons not employed by a railway company, and using merely for their own convenience the tracks of the company elsewhere than at a public crossing, although doing this with the knowledge and acquiescence of the company, are at most bare licensees, and by the law of West Virginia the company owes them no other or higher duty than it owes to trespassers, namely, to use reasonable care to avoid injuring them after they have been discovered in a place of danger.

3. RAILROADS—*Injuries On or Near Track—Invitee or Licensee—Employee of Railroad Contractor—Case at Bar.*—In the instant case, an action for injuries sustained by plaintiff when struck by an engine, plaintiff was an employee of a railroad contractor engaged on work for defendant railroad.  In going to and from their work the employees of the contractor used the defendant's right of way, with its knowledge and acquiescence, and there was no other reasonably practicable route for them to follow.  The space between the two main tracks was in general use by the contractor's employees, and at the place of the accident was the only walkway which they could reasonably have been expected to use.  From the evidence the jury might well have believed that the plaintiff was using the space between the tracks as a necessary incident to his employment, and that defendant railroad's employees and agents, including the engineer in charge of the engine which struck plaintiff, had notice of such use by the servants of the railroad contractor.  Such employees were particularly to be expected along the track about the hour when the accident occurred.  Plaintiff had as much right to be where he was at the time of the accident as if his actual employment had been at that place.

   *Held:* That the facts brought the plaintiff within the category of an invitee, and placed upon defendant under the law of West Virginia a duty toward him wholly different from that owing to a bare licensee.

4. RAILROADS—*Injuries On or Near Track—Injury to Employee of Independent Contractor—Warnings—Question for Jury.*—In the instant case plaintiff, an employee of an independent contractor, engaged on work for defendant railroad, was struck by an engine while returning from his place of work. Upon the evidence the case was not materially different from what it would have been if the plaintiff had been working for the independent contractor at the place of the accident. This being true, it was clearly a jury question whether the employees of the defendant railroad in charge of the backing engine which struck plaintiff used reasonable care to give adequate warnings of its approach, and it could not be said as a matter of law that the sounding of the whistle once several hundred feet before reaching a curve, which obstructed the view and upon which plaintiff was struck, was a sufficient compliance with the duty owing to the plaintiff.

5. RAILROADS—*Injuries On or Near Track—Employee of Independent Contractor—Contributory Negligence—Case at Bar.*—In the instant case plaintiff, an employee of an independent contractor, was struck by an engine while returning from his place of work on the railroad. Plaintiff was an invitee and was struck while walking between the main tracks of defendant railroad on a curve which obstructed his view of the approaching engine. The engine which struck plaintiff was on the west-bound track and as he approached the curve plaintiff saw an east-bound freight approaching. Plaintiff, after seeing the freight, might have crossed the tracks and put himself in a position of safety, or if he had stood exactly in the middle of the space between the tracks he would have escaped injury.

   *Held:* That whether his failure to take one of these alternative courses constituted negligence on his part in the emergency was a question for the jury, as was the question of whether he could have discovered the engine in time to have saved himself by one of these methods.

6. RAILROADS—*Injuries On or Near Track—Questions of Law and Fact—Instructions.*—In the instant case plaintiff, an employee of an independent contractor, engaged on construction for the defendant railroad, was struck by an engine of defendant while using defendant's roadbed as a walkway in returning from his work under circumstances constituting him an invitee. The instructions given by the court for the jury, to say the least, were as favorable to the defendant as the law warranted. The case was fairly submitted to the jury under proper instructions.

   *Held:* That the determination of the question of fact, involving the negligence of the defendant company, and the contributory negligence of the plaintiff, rested with the jury.

7. RELEASE—*Fraud—Injury Sustained by Employee of an Independent Contractor when Struck by Engine—Case at Bar.*—In the instant case plaintiff was injured when struck by an engine of defendant railroad. On

the day he left the hospital a claim agent of defendant paid him $60 and plaintiff signed a receipt releasing any claim against the railroad for damages. Evidence for plaintiff tended materially to show that his mind was impaired, and that he could readily have been imposed upon. Plaintiff did not read the release, and according to his testimony his eyesight was so impaired that he could not have read it. Plaintiff claimed that he thought he was signing a receipt for the price of a new suit of clothes. The court instructed the jury that the release was a bar to recovery, unless they should believe from the evidence that it was procured by fraud or imposition.

*Held:* That the evidence was sufficient to take this question to the jury, and that instruction was correct, and the finding of the jury thereon ought to stand.

8. RELEASE—*Fraud—Proof—Questions of Law and Fact.*—Evidence that a release was obtained by fraud and imposition must be clear and convincing, but the court cannot take the question from the jury merely because the court upon the facts proven would have reached the conclusion that the release was valid.

9. NEW TRIALS—*Trial Court Setting Aside Verdict and Entering Final Judgment—Code of 1919, Section 6251.*—Section 6251 of the Code of 1919, providing that where a verdict is set aside upon the ground that it is contrary to the evidence or without evidence to support it, a new trial shall not be granted if there is sufficient evidence before the court to enable it to decide the case upon its merits is a highly useful statute, but its only office is to test the sufficiency of the evidence. In this respect it is a desirable substitute for a demurrer to the evidence or a peremptory instruction. But it was not designed to materially change or affect the control of trial courts over verdicts of the jury in cases where there is any material conflict of testimony.

Error to a judgment of the Circuit Court of the city of Norfolk, in an action of trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Reversed and final judgment entered for the plaintiff.*

The opinion states the case.

*Ernest S. Merrill* and *J. Carlton Hudson,* for the plaintiff in error.

24

*Williams, Loyall & Tunstall* and *W. C. Plunkett,* for the defendant in error.

KELLY, P., delivered the opinion of the court.

John Flowers brought this action against the Virginian Railway Company to recover damages for personal injuries sustained by him when he was struck by an engine owned and operated by the defendant company. The jury returned a verdict in his favor, but the trial court set it aside and entered a final judgment for the defendant. Thereupon Flowers obtained this writ of error.

Disregarding certain serious conflicts in the testimony which were settled adversely to the defendant by the verdict, the facts as the jury were warranted in finding them, and upon which therefore we must decide the case, may be stated as follows:

The accident occurred in West Virginia. The defendant company, through its independent contractors, Boxley, Goodwin and Bray, was engaged in widening a tunnel for the purpose of laying an additional track therein, and a number of men, including the plaintiff, were employed on this work by the contractors. The tunnel was something more than half a mile east of the point at which were located the office of the contractors and the shacks occupied by their employees. Passing quite near to the office and shacks and extending all the way to the portal of the tunnel were the defendant's two main line tracks, known respectively as the east-bound and west-bound lines. These were parallel tracks and the distance from center to center between them was fifteen feet, thus allowing a clearance of about five feet between trains passing each other thereon. The railway at this point had been constructed along the mountain

side and there was a high cut on the north and a precipitous slope down into the ravine on the south. A third and temporary track running westwardly from the tunnel and extending about two-thirds of the way back to the office and shacks had been constructed on the south side of the main line and was being used by the contractors for hauling and dumping down the mountain side the material excavated from the tunnel. In going to and from their work the employees at the tunnel used the defendant's right of way, with its knowledge and acquiescence, and there was no other reasonably practicable route for them to follow. There was an old path along the top of the cut, but its termini were not very definitely disclosed by the evidence, nor was it satisfactorily shown to have been reasonably available for workmen going to and from the tunnel.

The plaintiff was injured on the 18th of June, 1920, about six o'clock in the afternoon. He had just previously quit work and was walking back to the office to "check out" for the day. About half way between the tunnel and the office there was a rather sharp curve in the road. As he approached this curve walking between the two main line tracks, he saw an east-bound freight train coming on the track to his left. He looked back to see whether a train might be coming on the west-bound track, saw none and heard none, and then shifted his position slightly nearer that track to allow more clearance to his left as the freight train passed him. Continuing to walk in this relative position, he looked back once more, saw and heard no train, and then walked a short distance, rounding the curve and with the freight train passing to his left, when he was struck by the tender of an engine which came up behind him on the west-bound track, running backward and having another engine in tow. The engineer of the engine

which struck the plaintiff was leaning out of his cab window and looking ahead, but did not and could not see him because of the curve and the overhang of the tender. The fireman could have seen the plaintiff at a distance ahead of the tender variously estimated by witnesses at from one hundred and fifty to four hundred feet, but did not see him because at the time of the accident he was firing the engine. There is a conflict of evidence as to the exact point on the curve at which the plaintiff was struck, but he could have seen the engine if he had been constantly looking backward at a distance of not less than one hundred and fifty nor more than four hundred feet before it struck him. The whistle of the engine was sounded once at a point several hundred feet before it reached the curve, but not afterwards, and the bell was not rung at all.

The space between the two main tracks was in general use by the employees working at the tunnel, and at the place of the accident was the only walk-way which they could reasonably have been expected to use. Between the westbound track and the side of the cut on the north there was a ditch which was more or less obstructed by rocks and logs. The temporary track south of the eastbound main line was on a lower level than the other two, and the space on each side of it, as well as between its rails, was rough and unfit for a walkway.

Shortly after the accident the plaintiff was taken to a hospital at Princeton, W. Va., where he was treated and cared for at the defendant's expense for about two months and then discharged and sent to his home in Sussex county, Virginia. On the day he left the hospital a claim agent of the railway company paid him sixty dollars and took from him a release of any claim against the company for damages resulting from the injury. About fifteen dollars of the money paid for the

release was used by the claim agent with the plaintiff's approval in the purchase of some clothing for him and a ticket from Princeton to Jarratt, Virginia, and the balance was turned over to the plaintiff.

The order of the court below setting aside the verdict and awarding judgment to the defendant does not show the ground or grounds upon which it was based. The defenses relied upon, either of which, if sustained by the lower court, would have been sufficient to bar the recovery, may be briefly stated thus: (1) No negligence on the part of the defendant; (2) contributory and concurring negligence on the part of the plaintiff; (3) the plaintiff's written release.

[1] 1. Did the evidence disclose any actionable negligence on the part of the defendant?

The accident having occurred in West Virginia, the substantive law of that State is controlling. This proposition is conceded by counsel on both sides and is well settled. Minor's Conflict of Laws, sec. 193–4, p. 479; 8 Thomps. Neg. (White's Supplement 1914) sec. 32a; 22 Am. Eng. Enc. (2nd ed.), p. 1378.

By agreement of counsel the West Virginia decisions as officially reported were used below and are to be used here as showing the law of that State, in lieu of any more formal proof thereof.

Whether the jury was warranted in finding that the defendant failed in the discharge of its duty to the plaintiff depends upon whether, under the circumstances, he was to be regarded as a mere licensee or as an invitee.

[2] Persons not employed by a railway company and using merely for their own convenience the tracks of the company elsewhere than at a public crossing, although doing this with the knowledge and acquiescence of the company, are at most bare licensees, and by the law of West Virginia the company owes them no other

or higher duty than it owes to trespassers, namely, to use reasonable care to avoid injuring them after they have been discovered in a place of danger. *Blagg* v. *B. & O. R. Co.*, 83 W. Va. 449, 98 S. E. 526; *Robertson* v. *Coal & Coke Ry. Co.*, 87 W. Va. 106, 104 S. E. 615; *Cheek* v. *Director General*, 87 W. Va. 321, 104 S. E. 618. It is clear that if John Flowers, the plaintiff in this case, is to be regarded as coming within the classification of mere licensees as above defined, the defendant did not violate any duty which it owed to him, and he cannot recover.

[3] But was he a mere licensee? The testimony of the witnesses along with the maps and photographs in evidence tended materially if not convincingly to show, and the jury might well have believed, that the plaintiff was using the space between the tracks as a necessary incident to his employment, and it is not denied that the employees and agents of the defendant, including in particular the engineer in charge of the engine which did the damage, had notice of such use by the servants of Boxley, Goodwin and Bray, and that such servants were particularly to be expected along the track at about the hour when this accident occurred. In view of the fact that the plaintiff had to use the right of way in going to and from his work (a fact which upon this appeal must be regarded as established), he had as much right to be where he was at the time of the accident as if his actual employment had been at that place, and there was, therefore, as much obligation on the employees of the defendant to expect and look out for him there as there would have been to expect and look out for him at the tunnel during working hours. The facts as they were evidently found by the jury brought the plaintiff within the category of an invitee, and placed upon the defendant a duty toward him wholly different from that

·owing to a bare licensee.  It is true that the plaintiff was not at work (as has usually been the case where the ·courts have sustained recoveries by invitees), but he was where. he had the right to be by virtue of his employment by the defendant's contractors, and where the defendant knew this relationship would probably bring him at the time of the accident.  His case falls clearly within the principles announced in *Cicerello* v. *C. & O. Ry. Co.*, 65 W. Va. 439, 64 S. E. 621.  The doctrine of that case is well stated in the fourth syllabus as follows:

"While it is the duty of employees of an independent ·contractor employed .on or along a railroad ·to use :reasonable care for their safety, yet as between them .and the railroad company this duty is reciprocal, and in :such cases the law does not require of such employees at work on or along the tracks to maintain a constant lookout for approaching trains, and at the same time pursue their labors, but does require of the operatives ·of trains an active vigilance, and to give reasonable danger signals to attract the attention of the persons so ·employed, to avoid doing injury to them, and to enable them to get. out of the way of moving trains.  Instruc- ·tions to the jury to the contrary were rightfully re- .jected."

In the course of the opinion in the case last cited, Miller, P., said:  "We think the true doctrine is laid ·down in Elliott that the duty to use reasonable care in :such relation is a reciprocal duty, and that the servant ·of a contractor cannot recover for injuries due to his ·own negligence.  The duty of a railroad company, on the other hand, in cases like the one we have in hand, would seem to require of it such reasonable provisions and precautions and the giving of such proper and ade- . ·quate warnings and signals as will be reasonably ade- ·quate to avoid injury to persons thus employed."

In *Smith* v. *Sunday Creek Co.*, 74 W. Va. 606, 82 S. E. 608, the same principle was applied. In that case the plaintiff's intestate was the four year old child of one of the defendant's employees. The court said: "Mere permissive use of premises by express or implied authority ordinarily creates only a license, yet if the use is in connection with the business of the owner or for his benefit, it is more than a mere license; and a greater degree of care is recognized on his part than in case of mere licensees using the premises for purposes of their own."

The case of *N. & W. Ry. Co.* v. *Denny*, 106 Va. 383, 56 S. E. 321, particularly relied upon by counsel for the defendant, has no controlling effect upon the case in hand. The accident in that case occurred in West Virginia, but the common law of West Virginia was not properly proved, and the case was decided as if the accident had occurred in Virginia. This may or may not be a material distinction; but one which is material, and which renders the case of no avail to the defendant here, is that the opinion shows that there was no evidence in the *Denny Case* that the use of the railroad track as a passageway was necessary to the accomplishment of the work upon which the employees were engaged, and the opinion expressly states: "But if it was necessary to go on the track in order to do the work which they were employed to do, that necessity would be the equivalent of an invitation."

[4] The instant case, as we view it upon the evidence, which the jury according to their verdict must have regarded as true, is not materially different from what it would have been if the plaintiff had been working for an independent contractor at the place of the accident. This being true, it was clearly a jury question whether the employees of the defendant in charge of the backing:

engine used reasonable care to give adequate warnings of its approach.   We cannot say as a matter of law that the sounding of the whistle one time, several hundred feet before reaching the curve, was a sufficient compliance with the duty owing to the plaintiff and other employees of the contractors who might reasonably be expected to be on or near the tracks, especially when those in charge of the backing engine knew they were about to pass a train on the curve.

[5] 2. Nor can we say as a matter of law that the plaintiff was himself guilty of negligence which bars his recovery.   It may well be argued that when he saw the freight train coming he ought to have crossed one of the tracks and remained in a place of safety until it passed. He could probably have done this although the space north and south' of the main tracks was not fit for a walkway; and he testified in effect that he would have tried to get to one of these places of safety if he had known a train was coming on the west-bound track.   It also seems clear that he could have stood still exactly in the middle of the space between the tracks until the engine had passed him, and thus escaped injury.   But whether his failure to take one of these alternative courses constituted negligence on his part in the emergency was a question for the jury.   So, too, whether his failure to discover the engine in time to save himself in one of the possible methods above suggested was negligence on his part seems to us to have been a jury question.   He looked back as he approached the curve and saw no train, then looked back again a little later and still saw none, and in a few seconds he was struck.   In the meantime, according to his evidence, he was walking, not as contended in the brief of counsel for the dedendant, on the other track, but, with his attention very naturally directed to the passing freight train, he was keeping a little to the north of the center of the space

between the tracks.   We cannot say as a matter of law that any ordinarily prudent man would not have done what the plaintiff did under the circumstances.   The "constant lookout" for trains from both directions, which the instructions of the court, hereinafter set out, imposed upon the plaintiff, must of course be understood as such alertness in that respect as was consistent with the plaintiff's situation, and his relationship as an invitee.   The language of instructions B and C in this particular was somewhat more favorable to the defendant than it should have been.

[6] The instructions given by the court to the jury, to say the least, were as favorable to the defendant as the law warranted.   It is to be observed that instructions B and C were given because a brakeman on the freight train had testified, contrary to what the plaintiff said, that the plaintiff was walking on the end of the ties of the west-bound track when he was struck.   The jury evidently accepted the plaintiff's version, and this is binding upon us.   It was, of course, proper to give instruction B upon the defendant's theory.   The instructions given, so far as material to a decision of the case, were as follows, 1 and 2 having been given for the plaintiff, and A, B, C, D and E for the defendant:

1.

"The court instructs the jury that if you believe from the evidence that it was reasonably necessary for John Flowers to use the defendant's right of way in order to go to and from his place of work to his home, and that the defendant's servants in charge of the train knew this, then the defendant owed John Flowers the duty of exercising ordinary care to keep a reasonable lookout to discover him in a place of danger upon said right of way,

and the failure to fulfill this duty would constitute negligence upon the defendant's part.

2.

"The court instructs the jury that if you believe from the evidence that it was reasonably necessary for John Flowers to use the defendant's right of way in order to go to and from his place of work to his home, and that the defendant's servants in charge of the train knew this, then the defendant owed John Flowers the duty of exercising ordinary care to give him warning of approaching trains; and such care would be commensurate with the danger of the place at which the train was running."

A.

"The court instructs the jury that although they may believe from the evidence that the plaintiff, as an employee of Boxley & Co., had been in the habit of using the right of way of the defendant company in going to and returning from work in the tunnel, such customs did not justify the plaintiff in walking on the railroad track of the defendant company, or in dangerous proximity thereto, if there was sufficient room outside of the said tracks which he could safely use for such purposes; therefore, if the jury believe from the evidence that there was a safe place for him to use, in returning from work at the tunnel, outside of the tracks of the railway company, then if the plaintiff chose to use such tracks and was injured while on the same, they shall find for the defendant, unless they further believe from the testimony that the servants of the defendant company, after discovering the presence of the plaintiff on the track, failed to use reasonable care to avoid injuring him.

## B.

"The court instructs the jury that the track of a railway company is of itself a proclamation of danger to a person going upon it, and that he must not only use his eyes and ears, looking and listening in both directions, but he must keep a constant lookout in each direction for approaching trains.   If such looking or listening does or would warn him of the near approach of a train, then it is his duty to keep off the track until the train is past, and to be on the track under such circumstances is negligence, and he cannot recover.   And if the jury believe from the evidence that John Flowers did not keep a constant lookout in each direction for approaching trains, and if they further believe that by such lookout he could have seen the approaching train in time to have stepped off the track, then the jury should find for the defendant, even though they may believe from the evidence that the defendant also was negligent.

## C.

"The court instructs the jury that the defendant railway company's track in itself was a proclamation of danger, and the law required John Flowers to keep a constant lookout for approaching trains, coming from either direction.   Any failure to do so on his part was negligence.

## D.

"The court instructs the jury that if they shall believe from the evidence that the engineer of the engine which struck the plaintiff was in his proper position on the engine, and was attending to his duty of running the engine and keeping a lookout, then it was not the duty

of the fireman on said engine to keep a lookout for persons on the track.

E.

"The court instructs the jury that if they shall believe from the evidence that the engineer of the engine which struck the plaintiff was in his proper position on the engine, and was attending to his duty of running the engine and keeping a lookout, then it was not the duty of the train crew of the rear engine to keep a lookout for persons on the track."

Our conclusion upon the question of negligence, both as to the plaintiff and defendant, may well be summed up in the language of this court in *Newport News, etc., R. Co.* v. *Bradford,* 100 Va. 241, 40 S. E. 904: "The case was fairly submitted to the jury under proper instructions. The determination of the question of fact, involving the negligence of the defendant company and the contributory negligence of the plaintiff, rested with the jury."

3. The validity of the written release mentioned in the statement of facts and pleaded in bar of the recovery was attacked by the plaintiff on the ground that it was obtained from him by fraud and misrepresentation, and at a time when he was not of sound mind.

[7, 8] The plaintiff signed the receipt, but, according to his testimony, he thought he was signing a paper for the purpose of getting money to buy some clothes, and did not know that he was signing a release. The paper was read to him and several witnesses testified that he said at the time he understood it. It is shown that he did not read it, and, as a matter of fact, according to his own testimony, his eyesight was so impaired at the time from his injuries that he would not have been able to read it. The evidence as to his mental condition was

conflicting, but on behalf of the plaintiff it tended materially to show that his mind was impaired and that he could readily have been imposed upon at the time. There was no proof of any intention to mislead him except such inferences as might be drawn from his statement that he thought he was signing a receipt for the price of the clothes, and from the fact that he signed a paper for a small consideration releasing the defendant, not knowing that it was to have any such effect. The court instructed the jury that the release was a bar to recovery unless they should believe from the evidence that it was procured by fraud or imposition. In our opinion the evidence was sufficient to take this question to the jury, and if that be true, the instruction was correct and the finding of the jury thereon ought to stand. *Ferries Co.* v. *Brown*, 121 Va. 13, 17, 92 S. E. 813; *Norvell* v. *Kanawha & M. Ry. Co.*, 67 W. Va. 467, 68 S. E. 288, 291, 29 L. R. A. (N. S.) 325. It is true that evidence of fraud and imposition in cases of this character must be clear and convincing. It does not follow, however, that the court can fairly take the question from the jury merely because the court, upon the facts proven, would have reached the conclusion that the release was valid. This can only be done where the evidence is clearly insufficient to support a different conclusion. The case of *C. & O. Ry. Co.* v. *Mosby*, 93 Va. 93, 24 S. E. 916, cited by counsel for defendant, was a suit in chancery and the decision was rendered by the chancellor without the intervention of a jury. In the instant case the question was properly referable to the jury, and as in *Norvell* v. *K. & M. Ry. Co.*, *supra*, the trial court could not properly withdraw it from their consideration.

[9] It follows from what has been said that the judgment complained of must be reversed and final judgment rendered here in favor of the plaintiff for the

amount of damages fixed by the verdict of the jury. Section 6251 of the Code under which the learned judge of the trial court acted in setting aside the verdict and awarding judgment for the defendant, is, as we believe, a highly useful statute, but its only office is to test the sufficiency of the evidence.   In this respect it is a desirable substitute for a demurrer to the evidence or a peremptory instruction.   But it was not designed to materially change or affect the control of trial courts over verdicts of the jury in cases where there is any material conflict of testimony.   See *Drake* v. *Norfolk Steam Laundry Corporation, ante,* page 354, 116 S. E. 668, decided today.

*Reversed and final judgment entered for the plaintiff.*