**CHESAPEAKE & O. RY. CO. v. CHAFFIN.**

No. 6142.

United States Court of Appeals.
Fourth Circuit.

Argued Oct. 9, 1950.

Decided Nov. 8, 1950.

See also D.C., 80 F.Supp. 957.

Amos A. Bolen, Huntington, W. Va. (C. W. Strickling and Fitzpatrick, Strickling, Marshall & Huddleston, all of Huntington, W. Va., on brief), for appellant.

Horace S. Meldahl, Charleston, W. Va., for appellee.

Before SOPER and DOBIE, Circuit Judges, and TIMMERMAN, District Judge.

SOPER, Circuit Judge.

Fred Chaffin, a citizen of New York, sued the Chesapeake and Ohio Railway Company, a Virginia corporation, in the District Court for damages for the loss of a leg six inches below the knee which he suffered on November 12, 1947 when he was run over by a work-train in Boone County, West Virginia. The Railway Company defended on the ground (1) that the accident was caused solely by the neglect of Chaffin in walking between the rails of the railroad track at night, and (2) that he had released the Railway Company from liability for the accident by executing a release and accepting the sum of $250 which the Railway Company, while denying all liability, had offered in full settlement of the claim. The case was submitted to the jury on interrogatories which related to these defenses. On the question of neglect of the Railway Company the jury was directed to find whether the engineer, by the exercise of reasonable care, could have stopped the train before it hit the plaintiff after the engineer was able to perceive that the object on the track was probably a person. To this inquiry the jury answered yes. With respect to the release the jury was asked to decide (1) whether the Railway Company misled or attempted to defraud the plaintiff in connection with the release and (2) whether the plaintiff accepted the money with knowledge that he was thereby settling his claim for injuries sustained. In reply the jury answered yes to the first and no to the second question, and fixed the damages at $10,000. The defendant then moved for a judgment notwithstanding the verdict, and in the alternative, for a new trial, but these motions were overruled and judgment for the plaintiff was entered by the court.

The grounds of the appeal are that there was no substantial evidence to justify the submission to the jury of any of the interrogatories and that there should have been a directed verdict for the defendant and failing that, the motion of the defendant for a judgment n.o.v. should have been granted.

The plaintiff was 44 years of age. He had attended school through the second grade and was able to read and write. For ten or twelve years he had lived in a mining community and had been boss of a crew which maintained the railroad tracks of his employer. Prior to that time he

worked for the Norfolk & Western Railway Company in track maintenance. He was not working on the day of the accident, and had spent the afternoon at a pool hall and beer garden where he waited for a friend to bring him a statement of his wages. He drank three or four bottles of beer during the afternoon, and about 6 P. M., after getting the statement, set out for his home one mile away carrying one dozen bottles of beer. He chose to walk in the center of the railroad track between the rails. It was then dark and he was wearing dark clothes. As he proceeded he caught sight of the headlight of an engine shining to his right as the train approached a curve in the road. He then started to step over the rail to his right and leave the track but his right trousers leg caught in a bolt or spike and he was thrown to the ground and knocked unconscious. He knew nothing further until he came to himself in the hospital later in the evening.

No one saw the accident but the engineer and the fireman of the train which consisted of an engine, tender and a caboose carrying fifteen men. The engineer and fireman said that the train was running about 20 miles an hour with the headlight burning; and when the train rounded the curve they saw an object on the track 500 or 600 feet away, which did not appear to be large enough to interfere with the operation of the train. Nevertheless they slackened the speed of the train to about 15 miles an hour, and it was not until they were two or three cars away that they concluded that the object upon the track might be a human being. Thereupon the emergency brake was applied and the train stopped 39 feet after it had passed over the plaintiff. Tests of the same train going at the rate of 17 miles an hour, subsequently made by the defendant, indicated that it could be stopped in 233 to 241 feet. The plaintiff introduced expert testimony of engineers which tended to show that such a train traveling at 15 miles an hour could be stopped in 125 to 150 feet and that an object on the track at night might be recognized as a human being at a distance of 200 to 300 feet. The engineer estimated in a pretrial deposition that in an emergency such a train could be stopped in 100 feet.

A question is raised as to the instructions of the judge to the jury that it was the duty of the engineer to use reasonable care to stop the train before it hit the plaintiff after the train reached the point where the engineer was able to perceive that the object on the track was probably a man. The contention is made that in West Virginia the rule is that a railroad company owes no duty to a trespasser upon its tracks except not to willfully or wantonly injure him after actually discovering his presence on the tracks, that is to say, after the operators of the train have actual knowledge that the object on the tracks is a human being. See Thore v. Norfolk & Western Ry. Co., 102 W.Va. 446, 135 S.E. 284; Connelly v. Virginian Railway Co., 124 W.Va. 254, 20 S.E.2d 885; Flowers v. Virginian Ry. Co., 135 Va. 367, 116 S.E. 672; 70 A.L.R. 1116; Restatement of Torts, Vol. 2 § 479; Chesapeake & Ohio Ry. Co. v. Craft, 4 Cir., 162 F.2d 67; Middleton v. Norfolk & Western Ry. Co., 4 Cir., 165 F.2d 907; Mast v. Illinois Central R. Co., D.C.N.D.Iowa, 79 F.Supp. 149, 161.

It is not necessary, however, to pass on this contention since the evidence clearly shows that the plaintiff executed a valid release whereby the Railway Company was discharged from all liability for damages incurred in the accident. After the occurrence, the plaintiff was taken to the hospital and the next morning his leg was amputated below the knee. He made a good recovery. Five days later and three days before he was released from the hospital a representative of the defendant visited him at the hospital in the course of an investigation, and took a statement from him after being advised that the patient was in proper condition to be interviewed. The plaintiff testified that the agent told him that the Railway Company was not liable to him and owed him nothing by reason of the accident since he was violating the law and was a trespasser on the property of the Railway at the time; but

the plaintiff on his part took the position during the interview that he was entirely free from fault. The agent did not offer to pay the plaintiff anything but he gave the plaintiff the name and address of H. B. Persinger, the claim agent of the Railway Company, and he told the plaintiff that if he would write to Persinger the latter would help to buy him an artificial leg. The plaintiff told the agent that such a leg would cost $250.

■ Three weeks later Persinger received a letter from the plaintiff which had been written for him by his nephew. In this letter the plaintiff referred to the accident and the statement of the investigator that if the plaintiff would write to Persinger the Railway Company would pay for an artificial leg. The plaintiff asked what the Railway Company would do for him. On December 18, 1947, the claim agent wrote to the plaintiff that the Railway Company did not think that his injury resulted from any neglect on its part but in view of his request, it submitted an offer of $250 in full and final settlement of the claim. The plaintiff was requested to advise the Railway Company if he wished a voucher sent him for this amount. The plaintiff returned the letter, having written thereon a request to Persinger to send the voucher, and he thanked the Railway Company many times. On December 24, 1947 the Railway Company sent a voucher to the plaintiff for $250 which was stated in the accompanying letter to be in settlement of the claim and the plaintiff was told that the voucher should be signed and witnessed and should then be handled as any other check. The voucher itself contained the statement that it was agreed upon and accepted in full settlement of any and all claims whatsoever growing out of the accident. It was signed by the plaintiff on January 14, 1948 and his signature was witnessed by the signatures of two nephews. The voucher was cashed at the bank on January 16, 1948.

This account of the transactions between the parties leading to the acceptance and signing of the voucher by the plaintiff is not disputed. During the trial an attempt was made by plaintiff's attorney to have him testify that he did not read the voucher and did not have any idea that he had released the Railway Company from all liability by using it; but the judge sustained an objection to the testimony and ruled that the papers spoke for themselves. In his charge the judge expressed the opinion that the voucher signed by the plaintiff constituted a full and complete release and the jury were told that "if a person is presented with a paper of that kind and signs it without reading it, he cannot afterwards come in and escape the consequences of signing it by simply saying that he did not read it." This instruction was in accord with the law of West Virginia and the law generally prevailing. See Rutherford v. Rutherford, 55 W.Va. 56, 47 S.E. 240; 45 Am.Jur. Release § 18; 53 C.J. Release § 30.

Nevertheless the plaintiff was permitted over objection to testify that when he read the first letter from Persinger of December 18, 1947 offering to pay him $250 in full and final settlement of the claim, he did not think that the $250 was a settlement for the loss of his leg but was to enable him to get an artificial leg; and the questions in respect to the validity of the release hereinbefore described were submitted to the jury. Moreover, the jury were instructed that if the plaintiff was induced by any sort of deception or fraud to agree to take $250, or if the plaintiff was led into a mistake, as a reasonable man might be led into a mistake, and did not know that he was making a settlement of his claim for injuries, then the jury should disregard the release.

■ The evidence did not justify the submission of these issues to the jury. There was nothing upon which a finding of deception or fraud on the part of the defendant could be based. Except for the interview between the investigator and the plaintiff at the hospital on November 17, 1947 there was no personal contact between him and the agents of the Railway Company, but the negotiations consisted entirely of written correspondence that was easily understood and completely de-

952

void of misrepresentation or deceit. Moreover, nothing took place on November 17 to confuse or mystify the plaintiff, who, although untutored, was a man of mature age well acquainted by long experience with the operation of railroad trains and the maintenance of railroad rights of way. The statement of the agent that the Railway had no liability to the plaintiff was no more than an expression of opinion which was not without foundation, under the circumstances of the case. It did not serve to deceive or coerce the plaintiff since he disagreed with the agent and insisted that he was not to blame. The suggestion that the Railway Company might be willing to buy an artificial leg was neither coercive nor deceptive, and thereafter there was no attempt to bring pressure to bear upon the plaintiff or hurry him into the settlement. Three weeks elapsed before he wrote to the company and thereafter three more weeks passed by after he received the voucher before he signed it and cashed it at the bank. In the meantime no attempt was made to see him or overpersuade him, but he was entirely free to consult his friends and relations and make his own decision. There was no promise of additional benefit to accrue to him if he signed the release, as in Irish v. Central Vermont Ry., 2 Cir., 164 F.2d 837, and nothing to indicate mental impairment on the part of the signer of the release, as in Flowers v. Virginian Ry. Co., 135 Va. 367, 116 S.E. 672, upon which cases the plaintiff relies.

Under the law of West Virginia, the evidence to overcome the clear and explicit terms of an express release must be strong and convincing. Carroll v. Fetty, 121 W.Va. 215, 219, 2 S.E.2d 521; McCary v. Monongahela Valley Traction Co., 97 W.Va. 306, 125 S.E. 92. In the pending case the evidence of fraud or misrepresentation or mistake is non-existent; and the judgment must be reversed and the case remanded with instructions to enter a judgment for the defendant.

Reversed and remanded.