924 F.2d 1051
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Steven Michael BURNS, by his next friend, Lois Gay BURNS,
Plaintiff-Appellant,
v.
CSX TRANSPORTATION, INC., a Virginia Corporation, Defendant-Appellee.
 No. 90-1016.
 United States Court of Appeals, Fourth Circuit.
 Submitted Nov. 20, 1990.
Decided Jan. 31, 1991.
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. John T. Copenhaver, Jr., District Judge. (CA-89-197-2)
 James Allan Colburn, Huntington, W.Va., for appellant.
 Marc Ellis Williams, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, W.Va., for appellee.
 S.D.W.Va.
 AFFIRMED.
 Before MURNAGHAN, WILKINS and NIEMEYER, Circuit Judges.
 PER CURIAM:
 
 
 1
 Steven Michael Burns appeals from the district court's order of a directed verdict in his negligence action against CSX Transportation, Inc. ("CSX"). After reviewing the facts de novo in a light most favorable to Burns, we determine that CSX was entitled to judgment as a matter of law. See Nationwide Mut. Ins. Co. v. McLaughlin, 429 F.2d 1317 (4th Cir.1970).
 
 
 2
 This case involves a civil action arising out of a CSX train running over Burns as he lay unconscious between the CSX's railroad tracks on May 25, 1988. It is unclear how Burns came to be on the tracks when the train passed over him. However, it is undisputed by both parties that he was intoxicated the night in question and had been seen running in the direction of the tracks immediately prior to his being run over by the train.
 
 
 3
 After a trial before a jury, the district court found, and the evidence supports, the following:
 
 
 4
 (1) Pedestrians have been known to use the right-of-way near which Burns was found for travel on foot. However, there was no evidence to indicate that pedestrians have been found lying unconscious between the tracks at one o'clock in the morning prior to the date of the accident.
 
 
 5
 (2) Due to fog and drizzling rain and mist, visibility was limited on the night of the accident. The lights of the train would shine for about 1250 feet and the fog and rain tended to turn the light back on itself to further limit visibility.
 
 
 6
 (3) Dogs were seen barking over some object at the point at which the train passed over Burns. The engineer of the train blew the whistle and the dogs parted when the train was approximately five car lengths or 200 feet away.
 
 
 7
 (4) At the same point, the head brakeman saw a black object between the tracks where the dogs had been barking. He thought it was a dead calf, an opinion in which the engineer concurred. When the train was about forty feet away, the engineer identified something white and concluded it was the calf's "socks." At that point, the object passed out of the engineer's view because of the way the train's nose blocks the immediate vision from the engineer's perch.
 
 
 8
 (5) The engineer radioed to the back of the train, ordering the crewmen to take a look at the object. When the caboose went over it, it was identified as a human being. Emergency stopping measures were used and the train came to a halt approximately 100 feet past where Burns lay.
 
 
 9
 (6) At the time of the accident, the train was travelling approximately ten miles per hour.
 
 
 10
 (7) The lowest part of the train is under the engine, and even had the engineer attempted to stop the train earlier, the lowest part would have passed over Burns before it could have come to a complete stop.
 
 
 11
 The substantive law to be applied relating to the issue of liability in this diversity case is the law of West Virginia. The cases in West Virginia clearly establish that plaintiff was a trespasser in this case. In a case quite similar to the facts in the present one, the West Virginia Supreme Court addressed the issue of the plaintiff who comes to the railroad tracks as a licensee but who, because of his own actions, ceases to be entitled to the standard of care owed a licensee. In Connelly v. Virginian Ry. Co, 124 W.Va. 254, 20 S.E.2d 885 (1942), the railroad company previously acquiesced to the use of the right-of-way by pedestrians. There, too, the plaintiff was intoxicated and unconscious while he lay on the tracks. The court held that he was entitled to the standard of care owed a trespasser:
 
 
 12
 We think that it is far more logical to say that although when the decedent came upon the railroad company's right-of-way, the likelihood is that he was a licensee, but that when he ceased to use its property in the manner it was obliged to permit, lay down upon its ties and become unconscious, he at once becomes a trespasser to whom it owed the duty to refrain from deliberate or wanton injury.
 
 
 13
 Connelly, 124 W.Va. at 260, 20 S.E.2d at 888 (1942).
 
 
 14
 Burns contends that the railroad acted wantonly when it saw an object on the tracks but did not stop the train. This contention ignores West Virginia case law which holds that there is no duty to stop the train for an object not discernible as a human being:
 
 
 15
 The mere discovery by those in charge of a train of an object on the track not discernible to be a human being does not impose upon the railroad company the duty to stop the train, unless the circumstances are such as would lead a reasonably prudent man to believe that the object was probably a human body.
 
 
 16
 Thore v. Norfolk & W. Ry. Co., 102 W.Va. 446, 448, 135 S.E. 284, 285 (1916). Though plaintiff contends that the engineers should have perceived the form on the tracks as a human being, he advances no evidence in support of his contention. The only evidence presented at trial toward this issue was the testimony of the crewmen, who testified they thought the object was a calf. The reasonableness of their belief is supported by their uncontradicted testimony that the weather conditions greatly limited their visibility on the night in question. They also testified that there were no apparent characteristics which would lead them to conclude the object was a human being. See Chesapeake & O. Ry. Co. v. Chaffin, 184 F.2d 948 (4th Cir.1950).
 
 
 17
 Plaintiff failed to come forward with evidence needed to establish a prima facie case of negligence. Since there is no evidence to show that defendant's crew did not act as reasonably prudent men in not stopping the train, a directed verdict was appropriate.
 
 
 18
 Burns also challenges the district court's refusal to admit a request for admission tendered by the defendant. The request asked Burns to admit he was lying face up and unresponsive on the tracks immediately prior to the accident. Burns attempted to introduce the request, rather than the response, in an attempt to prove that the engineers knew or should have known that the object on the tracks was a human being as the train approached. The district court refused the proffer of proof.
 
 
 19
 The district court did not exceed its authority when it excluded the evidence. First, requests for admissions are admissible at trial only against the party making the admission. A party may not offer his own responses as proof of the facts admitted. See C. Wright and A. Miller, Federal Practice and Procedure Sec. 2264 (1970). Since the request for admission was offered by the party making the admission, the plaintiff, it was properly excluded. Second, the request for admission was properly excluded because it was not relevant. Fed.R.Evid. 401. The conclusion that plaintiff attempted to draw from defendant's drafting of the request was that the defendant knew the object on the track was the plaintiff. Defendant acknowledges this fact. The dispute in the case is whether defendant should have known it was a human being prior to passing over him and in time to stop the train. Because the evidence offered by plaintiff does not "tend to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," Fed.R.Evid. 401, it may be excluded because it is irrelevant.
 
 
 20
 We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 21
 AFFIRMED.